## Case No. 9,617.

### MILNE et al. v. HUBER et al.

[3 McLean, 212.] [1]

Circuit Court, D. Ohio. July Term, 1843.

STATUTES—REPEAL—REPEAL OF REPEALING ACT—SPECIAL ACT—CONTRACTS—PROHIBITED BY LAW—REMEDY—CONSTITUTIONAL LAW—EX POST FACTO—RECOVERY—SEVERAL DEFENDANTS—EX DELICTO—EX CONTRACTU.

1. An act, in so far as it is repugnant to a prior act, repeals it.

[Cited in State v. Mines, 38 W. Va. 131, 18 S. E. 470.]

2. But the repeal of the last act, does not give vitality to the first act.

3. An express statute declares the repeal of the repealing act, shall not give force to the act repealed.

4. And this statute applies equally to repealed acts, whether repealed expressly or by a subsequent and repugnant act.

5. A contract growing out of an illegal transaction, or which is connected therewith, cannot be enforced.

6. The repeal of a prohibitory act does not make valid contracts entered into against law.

[Cited in Banchor v. Mansel, 47 Me. 62; Nichols v. Poulson, 6 Ohio, 309.]

7. But the legislature may give a remedy on a contract founded on a valuable consideration, where no remedy exists.

8. It may not only remove the prohibition, but where justice and good conscience require, suit may be authorised.

9. Such a law does not impair the obligation of the contract—is not an ex post facto law, nor does it in any respect conflict with the federal constitution.

10. That such a law is special is no more objectionable than every special law which gives corporate powers to an association of individuals.

11. In an action of tort, a recovery may be had against a part of the defendants.

12. But in an action ex contractu, the recovery must be against all or none.

[Cited in brief in Shapleigh v. Abbott, 41 Me. 174.]

[This was an action by Milne & Co. against Huber and others.]

Chase & Miner, for plaintiffs.

Fox & Schenck, for defendants.

OPINION OF THE COURT. This action is brought under the statute against the defendants as stockholders of the Washington Library Association, which was engaged in unlawful banking. Four thousand dollars of the notes in circulation, issued by said institution, and held as collateral security for the payment of three thousand dollars, were given in evidence. Also the following bill of exchange: "$3000.00 Gentlemen, Cincinnati, August 5th, 1840. Sixty days after date pay to the order of E. L. Jones, cashier, three thousand dollars, and charge to account of your ob't ser't. John Phillips. Directed to Messrs. Sylvester & Co. Indorsed, E. L. Jones, cashier, G. J. Slocum."

[1] [Reported by Hon. John McLean, Circuit Justice.]

By the 9th section of the act to prohibit the issuing and circulating of unauthorised bank paper, passed 27th January, 1816 [Laws 1816, p. 10], it is declared, "that all bonds, bills, notes, or written contracts, given to an unauthorised bank, or given to any person or persons, for the use of such bank, &c. shall be void," &c. The 10th section provides, "that every stockholder, shareholder, or partner, hereafter interested in any such bank, shall be jointly and severally answerable, in their individual capacity, for the whole amount of the bonds, bills, notes and contracts of such bank," &c. The 12th section authorises suit and judgment against any part or the whole of the persons interested in the bank. By the 23d section of the act of 28th January, 1824 [Laws 1824, p. 358], it is provided, "that no action shall be brought upon any notes or bills, hereafter issued by any bank, banker, or bankers, intended for circulation, or upon any note, &c. made payable to the bank, unless such bank, &c. shall be incorporated, &c. but that all such notes shall be held and taken in all courts as absolutely void." The 8th section of the act of the 23d of March, 1840 [38 Ohio Laws, p. 117], repeals so much of the above section, "as prohibits actions to be brought upon any notes or bills, issued after the passage of said act, by any bank, &c. un-'ess it shall be incorporated, &c., and which declares that such notes shall be void." So far as the act of 1824 was repugnant to that of 1816, it was repealed. The repugnancy consists in the latter act taking away the right of action given against the stockholders, &c. by the act of 1816. And the question here arises whether the repeal of the act of 1824 revives that part of the act of 1816 which was repealed by it.

By a general act, passed 14th of February, 1809 [Laws 1809, p. 162], it is provided, "that whenever a law shall be repealed, which repealed a former law, the former law shall not thereby be revived unless specially provided for." This provision, it is contended, applies only to laws expressly repealed, and not to an appeal by the repugnancy of the latter act. That the repugnancy does not repeal, but suspends the prior act, which is restored to its full vigor on the repeal of the repugnant act. This distinction seems not to be sustained. Whether the repeal be express or by reason of a repugnant act, subsequently passed, cannot be material in regard to this question. If the repealing act be repealed, it cannot, under the statute cited, give life to the act first repealed. So much of the act of 1824 as prohibited actions on the notes or bills of unauthorised banks, and which declares such notes and bills void, having been repealed by the act of 1840, and such repeal not having given vitality to such parts of the act of 1816 which were repugnant to the act of 1824, we must construe the act of 1816 as it now stands. In this view, sections 11, 12, 13 and 14, of the act of 1816, which regulate suits against the stockholders of an unincorporated bank by the bill-holders, are repealed; and we are to inquire whether, under other sections of the act, the bill-holders, or the holder of the bill of exchange, set out in the declaration, can maintain an action.

There is no express prohibition of an action by the bill-holders; but the act inflicts a penalty for issuing such bills, and for receiving or offering them in payment. This makes the whole transaction unlawful, and this is a fatal objection to the action. If the contract arises out of an illegal act, or is connected therewith, there can be no recovery upon it. Looking only to the act of 1816, the bank organization was against law, the issuing of the notes was prohibited under a penalty, and the receiving and offering such bills in payment subjects an individual to a penalty. Now every step taken in the creation and circulation of these notes or bills, was unlawful, and consequently no action can be brought on them. The act of 1816 was a public act, and the plaintiffs, when they received the bills in question, had notice that they were created and put in circulation in violation of law. The same objection applies to the bill of exchange. The act of the 23d of March, 1840, repealed the act establishing "The Washington Library Association," and in the second section of the repealing act, enacted "that each and every stockholder in, or member of, said company, is hereby declared to be jointly and individually liable for all bills, notes or other property issued or outstanding against said company; and also for any other liability or debt of said company. And the said company is vested with power to collect and receive such assets and valid claims as it may hold against any individual or company, in order to close up and settle the affairs of said company, but for no other purpose whatever."

The effect of this act is now to be considered. Whether the legislature had the power to repeal the charter of "The Library Association," is not necessarily involved in this inquiry. Nor can the decision of it, either way, materially affect the question between the parties on the record. But the charter involved private interests, although the power of banking might not have been given, which no act of the legislature could divest. Such interests are as well secured, and on the same principle, as a deed secures to the grantee a title to his land. If there was an abuse of the charter, by which it became liable to forfeiture, the inquiry should have been made, and the forfeiture enforced by a judicial procedure. But, if that part of the act which purports to repeal the charter, be unconstitutional and void, it does in no respect affect the validity of the second section of the act. An act may be void in part and good in part. Where a contract is made in express violation of law, a repeal of the prohibitory act does not impart validity to the contract. But this principle does not apply to the case under consideration.

The bill of exchange bears date the 5th of August, 1840, and at that time the notes or bills of the bank were received by the plaintiffs. The dates of those bills are not material, as the dates do not show the time they were put into circulation. This transaction took place five months after the act giving a remedy to the creditors of the association, in order to close its business. Now the bill of exchange may have been given to close the concerns of the bank, within the meaning of the act. A large amount of the bills of the institution being in the hands of the plaintiffs, they took the bill of exchange, and retained the notes of the institution as collateral security. Had the legislature power to make this provision? It will be observed that, in the act of 1816, the organization of the bank and the issuing of the bills were expressly prohibited, and a penalty was annexed for doing any of the prohibited acts; still, in the same law, a remedy was given against the stockholders by the bill-holders. That the prohibitory parts of the act, above referred to, took away all legal remedy against the bank on its bills has been decided; and yet, no one has doubted that the remedy given on these bills in the subsequent sections was effectual. Had these provisions been contained in separate acts, it is not perceived that a different effect could have been given to them. They must have been construed as the act of 1816 was construed. Indeed this is a general principle. All laws on the same subject shall be considered, so far as effect can be given to them, as one law. The negotiation between the parties before us took place several months after the remedy was given to and against the bank, and unless the contrary be made to appear, the court will presume that it is within the policy of the act. Such appears to have been its character. The argument that the law only embraced outstanding notes and debts of the company, at the time of its passage, is not sustainable, as the giving of a new note or bill may be as necessary in winding up the business of the bank as the payment, in cash, of an old debt.

At the time the contract was made with the plaintiffs, the disabilities of the bank were removed, and a power was given to it to collect its debts, and all its creditors were authorised to bring suit against it; and the members of the company were declared to be jointly liable. This is placing the bank, for the purpose of closing its business, on the legal ground it would have stood on, had there been no legal inhibition to its organization and business. That this law will operate upon all subsequent transactions, there can be no doubt, and no objection in principle is perceived to giving effect to it on all the open transactions of the bank.

Admit that the mere repeal of a prohibitory law would not give force to a contract made void by such law, yet it does not follow that the legislature may not remove a prohibition, and authorise a recovery, on a valuable consideration. The legislature cannot make contracts for individuals, and they cannot impose an obligation which does not equitably arise out of the transaction. But they may give a remedy where there is none, and where in good conscience there should be one. A remedy being general, applies to previous as well as subsequent cases.

In Matthewson v. Saterlee, 2 Pet. [27 U. S.] 407, speaking of a statute, the court say: "It is said to be retrospective. Be it so; but retrospective laws which do not impair the obligation of contracts, or partake of the character of ex post facto laws, are not condemned nor forbidden by any part of the constitution. The courts in Pennsylvania having decided that the relation of landlord and tenant did not exist under certain titles, the legislature passed a law that such relation should exist under those titles, and the court held the law valid and carried it into effect. The case being removed by a writ of error, from the supreme court of Pennsylvania to the supreme court of the United States, the judgment was affirmed. The "Washington Library Association," having assumed banking powers, issued its bills, which circulated as bank paper. Every principle of justice would hold the association liable to pay these bills; and by the common law, the holders of the bills could, by an action at law, recover from the association their amount. But the statute declared unauthorised banking unlawful, and consequently no action could be sustained on these bills. But the act of 1840 provides expressly that the holders of these bills may maintain an action on them. And if this can be done, each member of the association is responsible, the same as in an ordinary co-partnership. Every one must pronounce this remedy a just one, and it is clear that it does in no sense conflict with the constitution of the United States. The same rule applies, and with equal force, in behalf of the bank and against its debtors. We think, therefore, that on this ground the action is sustainable on debts contracted prior to the act of 1840. But, the court, in sustaining this action, need not decide this point. The contract on which this suit is founded was long after the act of 1840, giving this remedy.

The above views were given to the jury, who found for the plaintiffs, against a part of the defendants.

On a subsequent day of the term, a motion in arrest of judgment was made on two grounds: (1) Because it does not appear from the declaration that the plaintiffs are aliens. (2) Because the verdict is against a part only of the defendants.

The plaintiffs, in their declaration, state that they are subjects of the queen of Great Britain and Ireland. This, we think, is a sufficient averment. If the plaintiffs are sub-

jects, as averred, they are aliens. And the act of 1789 declares, that the circuit court shall have jurisdiction where the matter in dispute exceeds five hundred dollars, "where an alien is a party," &c. An alien means nothing more than a citizen or subject of a foreign state. An alien is defined to be by Bouvier, "one born out of the United States, who has not since been naturalized under the constitution and laws."

As to the second ground, in actions of tort, a jury may find a part of the defendants guilty, and the others not guilty. And the same rule may apply in an action founded on a statute, with special provisions to that effect.

It was held in Govett v. Radnidge, 3 East, 62, that where the defendants so negligently conducted themselves in the loading, &c., that the hogshead was damaged, the gist of the action was the tort, and not the contract out of which it arose; and therefore, that on the plea of not guilty, the two being acquitted, judgment might be had against the third, who was found guilty. This case seems to be brought into doubt, if not overruled, in the case of Weall v. King, 12 East, 452. A different decision was given in Powell v. Layton, 2 Bos. & P. (N. R.) 365, and in Max v. Roberts, Id. 454.

In actions ex contractu against several, it must appear on the face of the pleadings that their contract was joint, and that fact must be proved on the trial. 1 Chit. Pl. 50. This is otherwise against a common carrier and executors. If one executor plead plene administravit, the plaintiff may recover against the other. 1 Saund. 207a, 207b, note. Where by bankruptcy one of the defendants is discharged, and he plead it, it will not defeat the action, but the plaintiff may enter a nolle prosequi as to him, and go on against the others. But this cannot be done in case of an infant or feme covert. 1 Chit. Pl. 50. But if the special counts in the declaration could, under the special provisions of the statute, authorise a recovery against a part of the defendants; yet it is clear that the verdict cannot be sustained under the general count. This count is for money had and received, consequently the proof and finding of the jury must correspond with the joint liability set out in this count.

The jury have found generally only against a part of the defendants, and on such a finding the judgment cannot be entered, but must be arrested. In Bac. Abr. tit. "Verdict," L. it is said: "If part of the issue which is sensible, be insufficient in law, and the verdict be a general one, it is bad; for the court cannot in such a case but intend that part of the damages were given for a matter insufficient in law."

After the business of the court was closed, but, before the minutes were signed, an application was made to the judges, out of court, and a brief furnished, to amend the verdict, so as to apply to the good counts; but the motion being made too late, was not taken up and considered.