*Rannet, J.
The declaration filed in this case, in the court below, contained four counts. They each alleged that the plaintiff was the- holder of forty thousand dollars of notes issued by the ■Granville Alexandrian Society, a bank not incorporated or authorized by law to act as such, or to issue notes intended to circulate as money. Two of the counts charged the defendant’s testator with being a stockholder at the date of the notes, and the other two with becoming a stockholder subsequently to the dates of the notes. The object of the suit was to recover the amount of these notes under the act of 1816, to prevent unauthorized banking. A general demurrer was filed to this declaration, which was sustained by the court of common pleas, and a final judgment given for the defendant. Several exceptions are taken to the sufficiency of the declaration, which we will notice in their order; first premising that the requisites, of the declaration are prescribed by the act under which this remedy is sought. In the thirteenth section it is provided : 41 That in such suit it shall be sufficient for the plaintiff to set forth, in substance, that he is the holder of such bond, note, bill, or contract ; that the defendants were interested in said bank at the date •of such bond, bill, note, or contract, or subsequently thereto, and .that it remains unpaid.” (Swan-’s Stat. 137.)
It is not doubted that the general assembly had the right to prescribe the mode of proceeding, including the requisites of the pleadings; and it hence follows that the several objections to this declaration must be tested by the foregoing enactment.
It is first-insisted that, inasmuch as the Granville Alexandrian Society was duly incorporated for literary purposes in 1807, no new liability unknown to the act of- incorporation could, by the act of 1816, be imposed upon any stockholder, as a stockholder, without his consent; nor was any such liability intended to be imposed by said act. If, by this, it is intended to assert that a stockholder in the literai'y society, acting within the scope of the granted powers, is not to be affected by the unauthorized acts of others who step beyond them, without his *assent, although they may use the name of the corporation, the position is entirely correct. But if ic is supposed that the corporation can be used to shield from private responsibility those who act in its name, but go outside of its limits, *313 'it is untenable, as this court has already decided in the case of Lawler et al. v. Walker, 18 Ohio, 151, and Bartholomew v. Bentley, ante, 37. But this declaration avers the existence of an unauthorized bank of that name, and charges the defendant’s testator as a stockholder in such bank. If an issue was made upon it, it would devolve the obligation upon the plaintiff to prove these allegations; and if he did not, he would fail.
It can make no difference, however, that the name of the unauthorized bank was the same as the authorized literary society, or that most or all the stockholders in the latter engaged in the former. As stated by the court in Lawler v. Walker, “ If they lose sight of the object for which they were incorporated and engage in other and different pursuits, they must do so under all the obligations .and responsibilities.of ordinary parties in business.”
The next objection to the declaration is that it should have shown •the defendant a stockholder at the time or subsequently to the issuing of the notes, and also at the commencement of the suit; whereas, the averments have relation to the dates of the notes, and the declaration has no averment that he was such stockholder at ■the commencement of the suit. To the first part of this objection •the statute before recited is a sufficient reply. The declaration is in the words of the statute, and it is expressly enacted that that “ shall be sufficient.” But the reason of the provision is very apparent, and is in perfect harmony with the plain object of the whole law, to furnish the holder of such notes with a simple, speedy, -and effectual remedy. As he could have no knowledge of the time of issuing, except from the dates of the notes in his hands, and as that is prima facie the true time, it was intended to make such an .averment prima facie sufficient. In support of the last branch of the objection, we are referred to *the eleventh section of the act. We find no warrant for it in that or any other part of the .law; while it is in direct conflict with the 12th section, and, if allowed, would subvert the whole policy of the enactment. That section expressly provides that the holder may recover “ against any part •or the whole of the persons who were interested in such bank at the date of such bond, bill, note, or contract, or who became interested in such bank at any time between that and the commencement ■of such suit.” On the construction contended for, all those who combined in the illegal purpose at the issuing of the notes, or assented to it afterwards by becoming stockholders, could escape all *314 responsibility by transferring their stock at any time before suit bi’ought, unless such transfer could be shown to be merely colorable. We think, after the liability has once attached, it can only be avoided by paying the debts for which he has become liable.
It is said that there is no averment that the acts complained of were done after the act of 1816 took effect. The declaration alleges that the notes were issued on the first day of July, 1836, and on divers other days or times between that time and the commencement of the suit; and that the defendant was, at and after the dates of the notes, a stockholder, and is liable by virtue of the statute. How it could be more specific we are unable to see, unless the notes, with their dates, were specifically sot forth, which is expressly waived by the defendant upon the record.
Nor has the fourth section of the act of 1840 (also insisted upon}to prevent the circulation of foreign bank notes of a less denomination than five dollars (Swan’s Stat. 143), any application whatever to this description of paper.
The last position taken, and which presents the great question in the case, and has been argued at length and with much ability, is that no recovery can be had upon notes of this character, issued between the passage of the act of January 28, 1824, “ to regulate judicial proceedings where banks and bankers are parties, and to prohibit issuing of bank bills of certain descriptions” (Swan’s Stat. 147), and an act to *amend it, passed March 23,1840 (Swan’s Stat. 141). The argument is based upon the twenty-third section of the first named law, which reads: “ That no action shall be-brought upon any notes or bills, hereafter issued by any bank, banker or bankers, and intended for circulation, or upon any note, bill, bond, or other security given, and made payable to any such bank, banker, or bankers, unless such bank, banker or bankers shall be incorporated and authorized by the laws of this state to issue such bills and notes ; but that all such notes and bills, bonds and other securities shall be held and taken in all courts as absolutely void.
This section was repealed by the act of 1840, before alluded to,. It is claimed that the section recited repealed, by implication,'the sections of the act of 1816, allowing a recovery on notes of the-character sued upon in this action ; and that this remedy was not revived by the act of 1840, because the act of 1809 provides “ that whenever a law shall be repealed, which repealed a former law,. *315 the former law shall not thereby be revived unless specially provided for.” It is admitted that this precise question was made in the late court in bank, in the case of Johnson v. Bentley, 16 Ohio 97, and decided unanimously, by the four judges then upon the-bench, against the claim now made. But it is insisted that the decision is not law, and we are asked to review it. It is very evident-that the simplest justice to our predecessors as well as the public, should prevent us from interfering with decisions deliberately made, merely because a difference of opinion might exist between them and us upon a doubtful and difficult question of construction. But when, as in this case, the decision has relation to large amounts of a species of property which assumes a value in the market, changes-hands, and is dealt with upon the confidence reposed in the correctness of the decision of the highest judicial tribunal in the state; nothing short of the most urgent necessity to prevent injustice, or vindicate clear and obvious principles of law, would justify us in departing from it. We are all of opinion that no such necessity exists. On the contrary, we are entirely satisfied *that it promotes justice, sound policy and right, and gives a remedy where one was imperatively demanded, and, as we believe, entirely consistent with the intention of the legislature, whatever may be thought of its abstract correctness or the course of reasoning by which it is sustained.
I do not propose to enter into any extended examination of this-case, or the question involved in it; but, as we have been referred to the case of Milne & Co. v. Huber et al., 3 McLean, 212, in the circuit court of the United States, in which a contrary decision to some extent was made, I deem it proper to say that, as this was a question arising entirely upon the construction of our own statutes, it is the duty of the federal courts to conform to our construction, rather than that we should abandon it to follow theirs. For myself, I can not see the least reason for supposing that any part of the act of 1816 was repealed by the act of 1824, by implication or otherwise. On the contrary, it is most manifest that most of the provisions of the act of 1824 wore designed to render more effectual the very remedies provided by the act of 1816. It will be observed that the twenty-third section of the act of 1824, copied above, applied only to paper issued after it took effect. All such paper, issued before that time, could be recovered upon ; and the act of 1816, aided by that of 1824, furnished the remedy; nor is it *316 ■doubted that all such paper issued since 1840 may be prosecuted under the same act. Now if every word and syllable of the act of 1816 is still in force, so that suits may be brought and recoveries had upon paper issued before 1824, and since 1840, with what propriety can it, at the same time, be said to be impliedly repealed ? Such appeals, it is agreed on all hands, are not favored, and they only obtain where such seems to have beep the obvious intention of the legislature. But the act of 1824 did, as I think, take away, or suspend the remedy given by the law of 1816, as well as by any other law from such paper issued after its passage. The law operated upon a particular class of contracts, and denied a remedy upon them, and required the courts to hold them void; *but it can not, therefore, be said that the legislature intended to repeal .a remedial law under which such interdicted contracts might otherwise have been prosecuted, when all its provisions were still required to furnish a remedy for a still larger class of contracts not thus interdicted. As well might it be said that the attachment law would be repealed, if the legislature should deny a remedy under it to one or more of a particular class of contracts now allowed to be prosecuted under its provisions. In short, in my judgment, the interdiction of the law of 1854 was upon the contract, and did not operate upon the law of 1816. What is the consequence-? When the interdiction was l’emoved, the remedy was in force, and immediately -attached to all contracts falling within its provisions. This would be unquestionably so, unless the interdicted contract was absolutely void, in which case neither courts nor legislatures can make it valid. The court, in Johnson v. Bentley, held that these contracts were not void in such sense that, the prohibition being removed, they could not be enforced. And in this the case agrees with the one cited from McLean, where it was expressly held, in respect to these very contracts, that “ the repeal of a prohibitory act does not make valid contracts entered into against law ; but the legislature may give a remedy on a contract founded on a valuable consideration where no remedy exists. It may not only remove the prohibition, but, where justice and good conscience require, suit may be authorized ; and such a law does not impair the obligation of the contract, is not an ex post facto law, nor does it in any respect conflict with the federal constitution.” And the learned judge goes on to pronounce such a remedy highly just and proper. It is true, in that case, that the legislature expressly gave the remedy after the *317 paper was issued; but no reason can be given, if the legislature-may provide a retrospective remedy upon such contracts, why the courts may not apply one already existing, which is the case here, if 1 am right in supposing that the act of 1816 was not repealed. The case is to the point, to show that these contracts are not so far void, but that a proper remedy existing, they may be enforced. That remedy Judge *McBean found in the subsequent legislative act, while the court in Johnson v. Bentley, found it in the still existing law of 1816.
On the whole, we are of opinion that the declaration was sufficient, and that the court of common pleas erred in holding otherwise, and the supreme court in affirming the judgment.

The judgment is reversed and the cause remanded.