# MRS. BARBARA C. CAMPSIE, WIDOW OF EDWIN D. CAMPSIE, DECEASED, *v.* CATTON, NEILL & COMPANY, LIMITED.

## No. 1429.

RESERVED QUESTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. F. ANDRADE, JUDGE.

ARGUED NOVEMBER 17, 1922.                    DECIDED JANUARY 29, 1923.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

MASTER AND SERVANT—*Workmen's Compensation Act—compensation for maritime injuries.*

The right of compensation under the Workmen's Compensation Act is not *ex delicto* and the jurisdiction of the industrial accident board and the appropriate territorial courts to enforce such right in the case of maritime injuries depends primarily upon the character of the contract in the performance of which the workman was injured and not upon the locality at which the injury was occasioned.

SAME—*same—compensation for maritime injuries in performance of nonmaritime contract.*

Where the contract, in the performance of which the workman is injured, is nonmaritime the industrial accident board and the appropriate territorial courts have jurisdiction to award compensation even though such injury was occasioned while the workman was incidentally engaged in maritime work aboard a ship lying in navigable waters of the United States.

ADMIRALTY—*nonmaritime contract.*

A nonmaritime contract of employment is not rendered maritime by the incidental feature of occasional maritime work performed thereunder.

OPINION OF THE COURT BY PETERS, C. J.
(Perry, J., dissenting.)

The widow of the late Edwin D. Campsie applied to the industrial accident board of the City and County of Honolulu on behalf of herself and her two minor children for

compensation under the provisions of the local Workmen's Compensation Act (Act 221, S. L. 1915 as amended), claiming that her husband while in the employ of Catton, Neill & Company, an Hawaiian corporation, received personal injuries by accident arising out of and in the course of such employment, from which he died. The employer resisted the application, appeared specially before the industrial accident board and denied the jurisdiction of said board to award compensation upon the following grounds:

"(1)   That Act 221 of the Session Laws of 1915, Territory of Hawaii, as amended, namely the Workmen's Compensation Act, does not apply because the deceased, Edwin D. Campsie, was engaged in interstate commerce on board a vessel engaged at the time in interstate commerce, and in navigable waters in Honolulu harbor.

"(2)   That the injury was one with respect to which Congress may establish, and has established, a rule of liability, and therefore said Act, said Workmen's Compensation Act, has no application.

"(3)   That said Act is unconstitutional as it constitutes a regulation of and burden upon commerce among the several states, in violation of Article 1, Sec. 8 of the Constitution of the United States.

"(4)   That said Act is unconstitutional in that it violates Article 3, Sec. 2 of the Constitution of the United States, conferring exclusive admiralty jurisdiction upon the courts of the United States."

At the close of the hearing before the industrial accident board the employer moved for judgment upon all the grounds raised by its plea to the jurisdiction and the following additional grounds:

"(5)   That said Act is unconstitutional in that it is in conflict with the Judiciary Acts and the Judicial Code by which the District Courts of the United States are given exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction.

"(6)   That said Act does not apply because the Judi-

ciary Act and the Judicial Code as adopted by Congress gives to the District Courts of the United States exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction."

The industrial accident board awarded compensation. The employer appealed to the first circuit court. Upon application by the appellant for a stay of proceedings the circuit court pursuant to the powers vested in it by the provisions of section 2511, R. L. 1915, as amended, reserved to this court two questions of law and reported therewith as a part of the cause a statement of facts agreed upon by the parties. Such portion of the stipulation of facts as is material to our purposes is as follows:

"One Edwin D. Campsie put in an application for employment with Catton, Neill & Company, Limited, on February 6, 1920, and a few days thereafter was regularly employed by said Catton, Neill & Company, Limited, an Hawaiian corporation, as a machinist and floor worker, and remained in such employment up to the time of his death. The said Catton, Neill & Company, Limited, were then, and are now engaged in foundry work, carrying on machine shops, the buying and selling of machinery, electrical works and general repair works dealing with machines, engines, etc., repairs to engines and machinery including marine repairs, and their principal business is in the building and repair of sugar machinery. Most of Mr. Campsie's time was spent working in the shops of the Company situated in Honolulu, but occasionally he would go out and help install a sugar mill or go on board a boat to perform some repair.

"The steamship 'Hawkeye State,' a large ocean going vessel, owned by the United States Government and allocated to the Matson Navigation Company, came into the port of Honolulu, a few days prior to March 30, 1922, from the port of San Francisco, and on March 30th was lying at a dock in Honolulu harbor in navigable waters.

"The said steamship was at the time of the injury described herein, in the then Baltimore-San Francisco-Honolulu-San Francisco-Baltimore run, and prior to said

March 30th had arrived from San Francisco, and on March 30th was lying at a dock in Honolulu harbor in navigable waters. A few days afterwards it left Honolulu on its return trip to San Francisco and Baltimore on its regular run.

"Having found it necessary to make some repairs upon the steamship, Catton, Neill & Company, Limited, were engaged by Castle & Cooke, Limited, as agents of Matson Navigation Company, a California corporation, to make these repairs. One of such repairs was to a feed pump, and on the 30th day of March, 1922, Mr. Edwin D. Campsie went on board the steamship 'Hawkeye State' while she lay at the dock in Honolulu, to make certain repairs to the feed pump on the steamer, and while making such repairs was severely burned by steam escaping from said feed pump, as a result of which he died the next day. At the time of the injury he was a regular employee of said Catton, Neill & Company, Limited, and was working for said Catton, Neill & Company, Limited, in the course and scope of his employment, and the injury arose out of the scope of his employment."

The questions reserved are as follows:

"(1) Is the Industrial Accident Board of the City and County of Honolulu ousted of jurisdiction under the facts herein set forth?

"(2) Is Act 221 of the Session Laws of 1915 as amended unconstitutional either in whole or in part under the facts herein set forth?"

The legislative power of the Territory extends to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable. (Organic Act, Sec. 55.) Provision for compensation to injured workmen or their dependents occasioned by accident arising out of or in the scope of the workmen's employment is a rightful subject of legislation.

Have the industrial accident board and the appropriate courts of the Territory jurisdiction of the application in the instant case or is the widow's sole remedy in admiralty, jurisdiction to which was granted to the federal

judiciary by the provisions of section 2 of Article III of the Constitution and exclusive original jurisdiction over which was vested by the Congress of the United States in the district courts of the United States, saving to suitors, however, in all cases "the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any State?" See U. S. Rev. Stat. Sec. 563(8); Jud. Code Sec. 24(3); U. S. Rev. Stat. Sec. 711(3); Jud. Code Sec. 256(3); 36 Stat. L. 1087, 1091, 1161, Ch. 231, Amendment Oct. 6, 1917, 40 Stat. L. Ch. 97. The Act of Congress of June 10, 1922, further amending sections 24 and 256 of the Judicial Code can have no retroactive effect and is not considered.

In actions *ex delicto* for maritime injuries the locality at which the injuries were received controls jurisdiction. But the enforcement of the right to compensation under the Workmen's Compensation Act is not *ex delicto*. The right does not depend upon the fault of the employer nor is it in redress of a private wrong. It is purely statutory. *Berton* v. *Tietjen & Lang Drydock Co.,* 219 Fed. 763, 767.

Some courts have characterized the right to compensation as contractual; others as quasi-contractual accordingly as the act under consideration was elective or compulsory. We prefer to consider it in a class by itself enforceable *eo nomine* under the provisions of the saving clauses of the Judicial Code as amended by the Act of October 6, 1917 (40 Stat. L. 395, Ch. 97). So considered the provisions of the compensation act apply in the event of injury to a workman injured while working on a ship lying in navigable waters of the United States accordingly as his contract of employment was maritime or nonmaritime. If maritime the Workmen's Compensation Act, within the meaning of the case of *So. Pac. Co.* v. *Jensen* (1917), 244 U. S. 205, 216, does not apply as

it "contravenes the essential purpose expressed by an Act of Congress" (exclusive jurisdiction in United States district courts in admiralty) "or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." If nonmaritime the Workmen's Compensation Act would apply within the meaning of the case of *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, 476, for the reason that "under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

The antithesis of the major premises of the *Jensen* and *Rohde* cases is the controlling distinction. In the *Jensen* case the court said at page 217: "The work of a stevedore in which the deceased was engaging was maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction." In the *Rohde* case the court said at pages 475, 476, 477: "The contract for constructing 'The Ahala' was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at that time had any direct relation to navigation or commerce. * * * Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential."

This differentiation, depending as it does upon the maritime or nonmaritime nature of the contract of employment in the performance of which the servant is injured, is not an arbitrary one but is based upon reason and results from the implied legal incidents of the relation of master and servant. In the absence of express specific stipulations limiting the respective rights and liabilities of the parties to a contract of employment the general substantive rules of law defining those rights and liabilities control. In other words, the parties create the relation of master and servant and the law does the rest. Different rules of law, however, apply accordingly as the subject-matter of the contract is maritime or nonmaritime.

In the instant case we are concerned only with the respective rights and liabilities of employer and employe in respect to an injury received by the employe arising out of and in the course of his employment, and the difference between the rights and liabilities of the parties where on the one hand the injury is received by the employe in the performance of a maritime contract and where on the other hand the injury is received in the performance of a nonmaritime contract is sufficient to indicate the reason for the distinction and the holding that in the former case the implied legal incidents of the common law measuring such rights and liabilities control.

Take the simple case of a mariner's contract. In the absence of express special stipulations limiting the respective rights and liabilities of the parties to the contract there immediately attaches to the relation the implied legal incidents of the maritime law, and in the event of injury to the mariner his rights as well as the liability of the master are governed by the maritime law irrespective of the forum in which the same may be asserted.

"The contract of a seaman is maritime and has written

into it those peculiar features of the maritime law that were considered in the case of *The Osceola, supra,* * * *."
*Chelentis* v. *Luckenbach S. S. Co.,* 243 Fed. 536, 537.

The peculiar features considered in *The Osceola,* 189 U. S. 158, 175, are as follows:

"1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

"2. That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. *Scarff* v. *Metcalf,* 107 N. Y. 211.

"3. That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

Some of these rules of liability were unknown to the common law; others are modifications of the common law to fit maritime conditions.

Take the case of a laborer employed by a stevedore under contract by the latter to load cargo aboard a ship. The laborer while on the ship is injured through the negligence of those in charge of her; the laborer sues the ship for damages and the defense among others is contributory negligence. Under the admiralty law contributory negligence is not an absolute defense as at common law.

The United States Supreme Court in the case of *The Max Morris,* 137 U. S. 1, 14, said: "Contributory negli-

gence in a case like the present should not wholly bar recovery. There would have been no injury to the libellant but for the fault of the vessel; and while on the one hand the court ought not to give him full compensation for his injury, where he himself was partly in fault, it ought not on the other hand to be restrained from saying that the fact of his negligence should not deprive him of all recovery of damages. As stated by the district judge in his opinion in the present case, the more equal distribution of justice, the dictates of humanity, the safety of life and limb and the public good will be best promoted by holding vessels liable to bear some part of the actual pecuniary loss sustained by the libellant in a case like the present where their fault is clear, provided the libellant's fault, though evident, is neither wilful nor gross nor inexcusable and where the other circumstances present a strong case for his relief. We think this rule is applicable to all like cases of maritime tort founded upon negligence and prosecuted in admiralty, as in harmony with the rule for the division of damages in cases of collision. The mere fact of the negligence of the libellant as partly occasioning the injuries to him, when they also occurred partly through the negligence of the officers of the vessel, does not debar him entirely from a recovery." See also *Imbrovek* v. *The Hamburg-American Steam Packet Co.,* 190 Fed. 229, 232.

This inclusion in a maritime contract of the incidents of the maritime law is referred to in *Watts* v. *Camors,* 115 U. S. 353, at page 362, where the court said: "If it is considered as depending upon the intent of the parties, as manifested by their written contract, the performance of that contract is to be regulated by the law which they must be presumed to have had in view when they executed it."

This same thought is emphasized in the case of *Union*

*Fish Co.* v. *Erickson*, 248 U. S. 308, 313. There Erickson contracted orally at San Francisco, State of California, to work as a master mariner upon a ship of the libellee in waters adjacent to the District of Alaska. In an action by him in admiralty for a breach of his contract by his employer the libellee plead the statute of frauds of the State of California. The admiralty law contains no provision requiring a mariner's contract to be in writing and the defense was disallowed. The court said: "The parties must be presumed to have had in contemplation the system of maritime law under which it was made."

On the other hand, the parties to an ordinary common-law contract for personal service impliedly contract in respect to the local law. Under the local law, prior to the passage of the Workmen's Compensation Act, the fellow-servant rule and the defense of contributory negligence applied. The rights and liabilities of the respective parties were governed by the common law except as abrogated, adopted or modified by local statute. Since the enactment of the Workmen's Compensation Act the terms of that act are "written into" the general common-law contract of employment and the parties are presumed to have contracted in contemplation thereof.

A comparison is drawn between the common-law and admiralty liability of the master in the case of *Chelentis* v. *Luckenbach S. S. Co., supra,* at page 537, where the court said: "If a seaman who had been locked up or put in irons for disobedience of orders were to sue the master for damages in a court of common law, he could not recover like a shore servant, such as a cook or chauffeur, who had received the same treatment. So a seaman bringing suit in a common-law court for personal injuries could recover, even if guilty of contributory negligence, although a shore servant suing in the same court could not; and a seaman suing in a common-law court for per-

sonal injuries, could recover (except in the case of unseaworthiness of the vessel or failure to give proper care and medical attention) only wages to the end of the voyage and the expenses for maintenance and cure for a reasonable time thereafter, whereas in a similar case a shore servant would be entitled to recover full indemnity. Therefore, by virtue of the inherent nature of the seaman's contract, the defendant's negligence and the plaintiff's contributory negligence were totally immaterial considerations in this case; the sole question for the jury to determine being whether the plaintiff was entitled to recover because he had not received from the defendant his wages to the end of the voyage and the expense for his maintenance and cure for a reasonable time thereafter." On appeal (247 U. S. 372, 382) the Supreme Court of the United States said: "The work about which petitioner was engaged is maritime in its nature; his employment was a maritime contract; the injuries received were likewise maritime and the parties' rights and liabilities were matters clearly within the admiralty jurisdiction. * * * And unless in some way there was imposed upon the owners a liability different from that prescribed by maritime law, petitioner could properly demand only wages, maintenance and cure."

Obviously in the *Rohde* case the fact that the contract of employment was a common-law nonmaritime contract impelled the court to hold that the parties did not contract in respect to the maritime law but in respect to the local law, including the Workmen's Compensation Act. The decision in the *Rohde* case is epitomized in the language of the court found on page 477: "Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation and the application of the local law cannot mate-

rially affect any rules of the sea whose uniformity is essential."

That the Oregon Workmen's Compensation Act, interpreted in the *Rohde* case, is elective, and the territorial Workmen's Compensation Act compulsory, is immaterial. The United States Supreme Court in the *Rohde* case did not stress the elective features of the statute. We see no reason for any distinction. The California supreme court in the case of *Los Angeles Ship Building & Drydock Co.* v. *Industrial Accident Commission of California*, 207 Pac. 417, saw none. The California Workmen's Compensation Act is compulsory. Under facts similar to those in the *Rohde* case that court held that the contract of employment being nonmaritime, the local law by reason of the relation of the parties became implied incidents of the employment and measured their respective rights and liabilities. The court said: "Nor is it a matter of moment that the state compensation act be either elective or compulsory. Where, as in the *Jensen, Walker* and *Stewart* cases, the servant is injured while performing work of a maritime nature, or while employed under a maritime contract, the parties must be deemed to have contracted with each other in contemplation of the general system of maritime law and with the knowledge that their respective rights and liabilities would be measured and defined by that law. And since it was the design of the federal Constitution to preserve a proper harmony and uniformity in the maritime law it follows that where work is performed under a maritime contract no state has power to abolish the well-recognized maritime rules concerning the measure of recovery and substitute therefor the indemnity that is afforded by a workmen's compensation act. But where, as in the case before us, the contract of employment is nonmaritime and the work is not of a maritime character the Workmen's Compensation Law

fastens upon the relation of employer and employee the obligation to compensate for injuries received in the course of employment" (citing cases). "The contract being non-maritime the parties must be deemed to have entered into it with the knowledge that the law has attached to their relation of master and servant an obligation to pay the statutory compensation for any injury which may be received in the course of the employment.   *   *   *   But though the parties do not contract to create the rights and liabilities which are prescribed by the statute, nevertheless if their contract be nonmaritime, as in the instant case, there is no reason why it may not be deemed to have been entered into with reference to the state statute— with a knowledge that to the relation of master and servant which is created by the contract the law attaches as an incident to that status an obligation to compensate for injuries received in the course of the employment."

So, after all, whether the rights of the parties creating the relation of master and servant are to be determined by the admiralty law or the local law depends upon whether or not the contract creating that relation in the first instance is maritime or nonmaritime.

A maritime contract is defined as one concerning transportation by sea or relating to navigation or maritime employment; it must be one of navigation and commerce on navigable waters. 1 C. J. title "Admiralty," Sec. 67, p. 1266. "It is not enough that the service which sprang from the contractural relation be performed on water or even that it be done on board and for the benefit of a vessel which is afloat." *Id.*

"It is not enough that the service which sprang from the contractual relation be performed on water or even that it be done on board and for the benefit of a vessel which is afloat. These are not the exclusive tests. The service arising from the contract must be of a maritime character and, I might add, not nominally, but substan-

tially, so. The expression 'maritime character' or 'nature' is held to mean any act which contributes to the navigation of the vessel, presently or prospectively."

*The Sirius,* 65 Fed. 226, 228.

"The subject-matter of the contract—the substantial object and end—must pertain to navigation or be connected with transactions performed by vessels on the sea to become maritime in its nature and be clothed with the privilege of a remedy in admiralty courts; and it appears to me that an agreement acquires this maritime quality only when the matters performed or entered upon under it pertain to the fitment of a vessel for navigation, aid and relief supplied her in preparing for and conducting a voyage, or the freighting or employment of her as the instrument of a voyage. Collateral contracts with or assistance by services or advances to an owner or master, incidentally benefiting a voyage, acquire no special property thereby which renders them maritime."

*Cox v. Murray,* Fed. Cas. No. 3304 (v. 6, p. 681).

Within this definition the contract of employment as between the deceased and Catton, Neill & Company was clearly nonmaritime. The particular business of the employer was the "building and repair of sugar machinery"—work to be done on land and in no way connected with transportation, navigation, maritime employment or commerce on navigable waters. The deceased was given employment over a year before the accident occurred as a machinist and floor-worker in its machine shops—similarly nonmaritime work. No specific stipulations limiting the rights or liabilities of the parties in respect to their relation as master and servant appear. They created the relation. The law does the rest. Did the law maritime or the local law, including the local Workmen's Compensation Act, become by implication the measure of their respective rights and liabilities? The answer inevitably is that the local law attached.

Nor is it material that deceased occasionally performed

maritime service. It is conceivable that the deceased during the course of his employment might have performed work in the shop under his employer's maritime contract. Under that state of the case it certainly cannot be said that in respect to that particular work the deceased was in the performance of a maritime contract and the liability of injury to him in the performance of such work should be measured by the maritime law, while any injury that should happen to him in the performance of his other work should be measured by the local law. No less so, as here, where the injury occurred aboard ship. In either case maritime service would be merely incidental to a common-law contract of employment and the measure of the rights and liabilities of the respective parties would be according to the local law. The original contract of employment of the deceased continued until notice by either the deceased or the employer to the other of its termination and it was in full force and effect with all its legal incidents at the time of the accident.

To say that the contract was severable and each day, or even each job, accordingly as the work in which the deceased was engaged, was maritime or nonmaritime creating a new contract with different legal incidents, would be to fly in the face of the authorities that hold that in order to invoke admiralty jurisdiction the contract sought to be enforced must not alone be maritime but purely maritime. *The Belfast,* 7 Wall. 624, 637; *The Pennsylvania,* 154 Fed. 9, 12; *The Zillah May,* 221 Fed. 1016; *Plummer* v. *Webb,* Fed. Cas. No. 11,233 (v. 19, pp. 891, 894) ; *Turner* v. *Beacham,* Fed. Cas. No. 14,252 (v. 24, p. 346) ; *Rhederei A. Gesellschaft Oceana* v. *Clutha Shipping Co.,* 226 Fed. 339; *St. Paul Fire & Marine Ins. Co.* v *Birrell,* 164 Fed. 104; *The Sarah E. Kennedy,* 29 Fed. 264; *The Humboldt,* 86 Fed. 351.

There are many cases to be found in which the courts

have characterized the contract sought to be enforced as maritime and have entertained jurisdiction thereof although attached thereto were common-law incidents. For instance, in *Domenico* v. *Alaska Packers' Assn.* 112 Fed. 554, 556, where the principal subject of the contract upon the part of the libellants was for rendition of services as fishermen at Pyramid harbor but it included work in the cannery on shore in preserving fish caught by them and also the labor of placing the fish on board a vessel for transportation elsewhere, the court held: "The contract is, however, maritime in its nature. The fact that while engaged in fishing at Pyramid Harbor the libelants slept on shore, and mended their nets and cared for the fish on shore, and that this was contemplated by the contract, does not make it any the less a maritime contract which a court of Admiralty has jurisdiction to enforce," in *Evans* v. *The N. Y. & P. S. S. Co.,* 145 Fed. 841, where the admiralty court took jurisdiction although a storage contract was incidental to the contract for transportation of the goods stored by water, and in *Rosenthal* v. *The Louisiana,* 37 Fed. 264, where a contract of affreightment contained an incidental stipulation for insurance. Obviously the converse is equally true that where a non-maritime .contract contains incidental maritime features the contract is essentially nonmaritime and the courts of admiralty are without jurisdiction thereof.

A mere incidental maritime service does not convert a nonmaritime contract into a maritime contract. In the case of *McBride* v. *Standard Oil Co. of New York,* 188 N. Y. S. 90, the employer was engaged in the business of distributing petroleum and its products; the deceased employe was employed as a chauffeur in connection with such business; he had driven a car to a dock to procure some barrels of gasoline from a barge alongside the dock; while standing on the side of the barge the employe

was injured.  On that state of facts the employer contended that the work which the deceased was doing was maritime in its nature and that the state industrial commission for that reason was without jurisdiction to award compensation to his widow.  The court said: "The duties of a chauffeur in the nature of things pertain to the land and not to water.  The work of the deceased at the barge was merely incidental to his general duties as such chauffeur and had nothing otherwise to do with the barge."

In the case of *Berton* v. *Tietjen & Lang Drydock Co.,* *supra,* conflict arose between the state courts under the Workmen's Compensation Act and the federal court in admiralty in respect to the claim for compensation for injuries received by a workman while employed on a tug in a floating drydock floating upon navigable waters.  The facts disclosed that the injured workman at the time of the accident was, and for some time prior thereto had been, employed as a machinist in connection with nonmaritime work.  The court held that the claimant's contract was nonmaritime and that the local Workmen's Compensation Act applied, using the following language found on page 768: "The plaintiff was not a seaman or one engaged to carry out a maritime enterprise.  He was a machinist and his relation to the vessel, in the repair of which he was engaged, was but incidental to his general employment as a machinist.  The contract of hiring was essentially of a common-law nature and what was done by the plaintiff at the time of his injury was merely an incident to his employment.  *   *   *   Neither the contract of hiring in the instant case, nor the obligation annexed to it by the New Jersey statute, is maritime (*Insurance Co.* v. *Dunham,* 78 U. S. (11 Wall.) 1, 20 L. Ed. 90), and neither is subject to the exclusive control of the maritime law.  It is only when the substance of

the whole contract is maritime that a court of admiralty takes jurisdiction" (citing cases).

"All nonmaritime contracts must be considered as made in contemplation of existing state law, including Workmen's Compensation Acts, and injuries sustained under such contracts will be governed by such local law, whether occurring upon land or water."

See Cal. Law Review (Sept. 1922) p. 525. See also Harvard Law Review (Apr. 1922) p. 743.

In the instant case the contract of employment created the common-law relation of master and servant in respect to a nonmaritime service. That the servant as an incident of such employment occasionally performed maritime work and at the time of his injury was so engaged is immaterial. His contract was not thereby converted into a maritime contract. It remained nonmaritime.

For the reasons announced the questions reserved are answered in the negative.

*U. E. Wild* (*Smith & Wild* on the brief) for claimant.

*A. L. Castle* (*Robertson & Castle* on the brief) for defendant.

DISSENTING OPINION OF PERRY, J.

One Edwin Campsie, an employee of Catton, Neill & Co., Ltd., while engaged in repairing the feed-pump on the ocean-going steamship "Hawkeye State" then lying at a dock in the harbor of Honolulu, in navigable waters, and during a call of that ship for the purpose of loading and unloading freight and passengers, was injured by escaping steam and died as a result of these injuries. His widow, for herself and on behalf of their children, thereupon instituted proceedings before the industrial accident board of the City and County of Honolulu for the recovery of compensation for his death in accordance with the terms of what is generally known as the Workmen's Compensation Act of the Territory of Hawaii. The board awarded compensation to the petitioners. From that

award an appeal was noted to the circuit court of the first circuit and the latter tribunal reserves to this court the question of whether the petitioners may recover under the Workmen's Compensation Act or whether they are limited to such remedy as is available to them in a court of admiralty. In my opinion they cannot lawfully recover under the Workmen's Compensation Act. It will serve no useful purpose to set forth my views at length. I shall endeavor to state them briefly.

The ultimate question is, as it seems to me, whether, under the particular circumstances of this case, the Workmen's Compensation Act of this Territory conflicts with Article III, Section 2, of the Constitution, which provides that "the judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction" or with Article I, Section 8, of the Constitution (Congress may make necessary and proper laws for carrying out granted powers) or with the general maritime law recognized by our admiralty courts or with any act of Congress relating to that law. (The Judiciary Act of 1789, Sec. 9, granted to United States district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * *, saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." This provision was carried into the Revised Statutes—Secs. 563 and 711—and thence into the Judicial Code—clause 3, Secs. 24 and 256. The saving clause remained unchanged until the statute of October 6, 1917, added "and to claimants the rights and remedies under the workmen's compensation law of any state.") If it does it is invalid to that extent and the petitioners must be left to their remedy in admiralty; if it does not, recovery may be had under the compensation law. All of the recent decisions of the Supreme Court of the United States make this the test.

*In So. Pac. Co.* v. *Jensen,* 244 U. S. 205, the injured person was a stevedore engaged at the time of the injury in moving cargo with the aid of an electrical conveyor on board of a ship in commission lying in navigable waters. It was a case of injury to a person engaged in maritime service; the tort was purely maritime and the contract out of which the tort arose was likewise purely maritime. The Supreme Court of the United States held that under those circumstances the compensation law of the State of New York was not enforceable, holding that if the legislation under consideration "contravenes the essential purpose expressed by an act of. Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations" it is not valid and that "this limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our international laws by the Constitution itself." It held more particularly that the New York statute "conflicts with the Constitution and to that extent is invalid." The petitioners were not permitted to recover under the workmen's compensation law. The court further said that in so deciding, "the work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

In *State Industrial Commission of New York* v. *Nordenholt,* decided by the Supreme Court of the United States on May 29, 1922, advance sheets No. 625, the court said that "the liability of the employer for damages on account of injuries received on shipboard by an employee under

a maritime contract is matter within the admiralty jurisdiction."

In *Grant Smith-Porter Company* v. *Rohde,* 257 U. S. 469, the libellant received injury while at work on a partially completed vessel lying at a dock in navigable waters. His employer, the Grant Smith-Porter Ship Co., at and prior to the time of libellant's injury, was engaged in constructing steam vessels for the United States government. One of these was the steamer "Ahala." Prior to the injuries the "Ahala" had been launched into navigable waters but although substantially completed was not yet ready for delivery and the work upon which Rohde was engaged pertained to the construction of the vessel by the respondent company. He was engaged in constructing a bulkhead enclosing certain tanks in the vessel. The court held that the vessel, because it was not yet completed, was not a ship within the meaning of the maritime law and that "the contract for constructing 'The Ahala' was non-maritime, and, although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment nor his activities at the time had any direct relation to navigation or commerce." (That "the rule that contracts for construction of ships are non-maritime and not within the admiralty jurisdiction applies to contracts for the work and material necessary to finish a partly constructed vessel which has been launched," see *The Thames Towboat Co.* v. *The Francis McDonald,* 254 U. S. 242.) The court reaffirmed that "the general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must be treated as settled." It held that Rohde could recover under the workmen's compensation law of Oregon in which state the accident happened

and could not recover damages in an admiralty court. It said, evidently summarizing its reasoning, "here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation; and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential." The workmen's compensation law of Oregon gave an option both to employers and workmen to accept that law or to reject it, and provided that the compensation received thereunder should be in lieu of all other claims for the injury or death. How far the court relied upon this optional feature of the statute in arriving at its conclusion is not entirely clear to me. It said on this subject: "The injury was suffered within a state whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law. *Union Fish Co.* v. *Erickson,* 248 U. S. 308. Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations." If this was an essentially fundamental fact in the disposition of that case, the case at bar is distinguishable in that respect; for in Hawaii the Workmen's Compensation Act is compulsory and not optional. If this was not an essential in the minds of the Supreme Court of the United States, then for another fundamental reason the case at bar is distinguishable from the *Rohde* case.

In the *Rohde* case, in referring to the *Jensen* case,

*supra,* the *Chelentis* case (247 U. S. 372), the *Erickson* case (248 U. S. 308) and the *Knickerbocker* case (253 U. S. 149), the court said that "in each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity." I take it that the fact that the employment or contract was maritime in nature was the reason why the rights and liabilities of the parties were held to be prescribed by general rules of maritime law essential to its proper harmony and uniformity; and that if in the case at bar the employment or contract was maritime the same results must follow and the Workmen's Compensation Act must be denied applicability or validity.

That the tort involved in the case at bar was maritime is beyond doubt. As "frequently asserted" by the Supreme Court of the United States (*Rohde* case, p. 476) the jurisdiction of admiralty in tort matters depends upon *the locality.* Here the tort occurred upon a completed vessel, actually engaged in navigation, and in navigable waters. Under the recent cases of the Supreme Court of the United States it seems to be essential, too, that the tort should have arisen out of a contract maritime in its nature. Was the contract in the case at bar maritime in nature? At this point the question naturally arises, what contract is it that is to be thus examined into? Is it the contract between the employer, Catton, Neill & Co., and the ship, or is it the contract between the deceased (Campsie) and Catton, Neill & Co.? I find it unnecessary to decide this point definitely for the following reasons: If it is the contract between Catton, Neill & Co. and the ship which is to be examined into, that contract under every test was clearly and purely maritime. It had no non-maritime features. So also, if it is the contract between Campsie and Catton, Neill & Co.

that is to be examined into, it is in my judgment to be regarded as maritime; and this evidently is the precise point upon which the majority and minority of this court differ. It is true that it has been repeatedly held in Federal authorities that with reference to admiralty jurisdiction, a contract which is mainly maritime and only in some incidental features non-maritime is within the jurisdiction of admiralty and that a contract which is mainly non-maritime and only in incidental features maritime is not within the jurisdiction of admiralty. But it seems to me that that discussion and that doctrine have no force in the case at bar. All that the pleadings show in this respect is that Campsie, in February, 1920, applied to Catton, Neill & Co. for employment and was thereupon "regularly employed" by the company as machinist and floor worker and that the work actually done by him in the course of the employment was up to the time of his death mainly in connection with non-maritime machinery. It does not appear that he had a contract for a definite period of time. For aught that appears the employment was terminable at any time at the will of either party. As long as the employment continued and the services were performed, Campsie, it is to be presumed, was to be paid a stated sum of wages per day or per hour. The work done by him in marine repairs in the instance under consideration or in any other instance was clearly severable from the work done by him on sugar-mill machinery or in other engagements on shore. If he, in the event of his injuries not having resulted in death, or his heirs or representatives as the facts actually occurred, had sought to invoke the aid of a court of admiralty in recovering compensation for the injuries or death, as the case might be, would not admiralty have had jurisdiction irrespective of the fact that most of his work was done ashore and on non-maritime matters? It seems to me that it certainly

would.  The present case would not be dissimilar in this respect from those in which a watchman has been held entitled to the protection of an admiralty court for his wages earned while guarding a ship engaged in navigation but not so entitled while guarding a ship laid up for the winter or for lack of business  (*The Fortuna,* 206 Fed. 573, and *The Erinagh,* 7 Fed. 231, 232, 235) ; nor dissimilar from a case in which charges for wharfage were held recoverable in admiralty as against ships that incurred those charges while engaged in navigation but not as against the same ships incurring those charges while out of commission and simply lying in winter quarters (*Robinson* v. *The Vanderbilt and other ships,* 86 Fed. 785) ; nor dissimilar from the case of a tort arising out of a watchman's contract to protect a vessel while serving merely as a storehouse for grain, during the winter, although the same watchman protected the same vessel while it was actually engaged in navigation and before going into winter quarters (*The Richard Winslow,* 67 Fed. 259, 261, and on appeal, 71 Fed. 426).  In cases of each of these three classes, the admiralty court, in entertaining jurisdiction with reference to the periods of time when the ship served was engaged in navigation, found no difficulty in merely discarding the fact that at other times, although under the same general employment with the same immediate employer, the watchman or owner of the wharf as the case may be served ships that were out of commission and in that respect rendered services that were non-maritime.  Practical difficulties there are none in segregating the time when Campsie served in repairing the feed-pump from the other periods of time when he served in non-maritime ways; nor do I see any legal obstacle to this severance in the doctrine invoked relating to contracts mainly non-maritime and only incidentally maritime.  On the subject of severability of

somewhat similar items see *Grant* v. *Poillon,* 20 How. 162, 168; *Turner* v. *Beacham,* Fed. Cas. No. 14252; and *Plummer* v. *Webb,* Fed. Cas. No. 11233.

The fact that the ship itself is not liable for the tort sued upon is not controlling in determining whether admiralty has jurisdiction. In such a case, in spite of the nonliability of the ship and its owners, the immediate employer of the injured employee may nevertheless be sued in admiralty (the other jurisdictional facts being present) although the employer was not the owner of the ship and merely contracted with the ship owners to perform a maritime service for the ship. *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 61, 62.

Regarding this case, then, as one in which the employment and the decedent's activities thereunder were entirely maritime and the tort leading to his death being also unquestionably maritime, it seems to me that the case at bar falls within the rule of the *Jensen* case and not within the rule of the *Rohde* case and that the present petitioners cannot recover under the Workmen's Compensation Act. In contradistinction to the *Rhode* case, Campsie's activities at the time of his injury did have direct relation to navigation and commerce. It has been definitely held that repairs to a completed ship at the time engaged in navigation constitute a maritime service. *North Pac. S. S. Co.* v. *Hall Bros.,* 249 U. S. 119; *The Planter,* 7 Pet. 324, 340; *The Robert W. Parsons,* 191 U. S. 17; 1 Ency. U. S. Rep. 142; 1 Am. & Eng. Ency. L. 660; 1 C. J. 1276, Sec. 88. The "Hawkeye State" was in the course of a voyage from Baltimore to Honolulu via other ports and was desirous of proceeding on the return trip. She was here to take on freight and passengers. Her feed-pump broke down and repairs were needed to enable the ship to proceed on its voyage and to perform its duties as a carrier of freight and passengers. The

repairs of the pump were in aid of and related to navigation and nothing else. Campsie's services with reference to the pump were for the same purpose and in law were wholly disconnected from any services which he rendered ashore for sugar mills, land engines or other machinery. If in the *Jensen* and *Knickerbocker* cases the fact that "the employment or contract was maritime in nature" enabled and required the court to say that "the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity" and that the workmen's compensation statute would interfere with that proper harmony and uniformity of law, the same results must follow in the case at bar, if my view is correct that the employment and activities in repairing the feed-pump were maritime in nature. In the *Rohde* case the court concluded that "the application of the local law cannot materially affect any rules of the sea whose uniformity is essential" because it had found that "their rights and liabilities had no direct relation to navigation" and perhaps also because it found that "the parties contracted with reference to the state statute." In the case under consideration the rights and liabilities of the parties did have a direct relation to navigation and, if it be material, the parties did not contract with reference to the territorial statute,—any further than parties contract with reference to a law of the land simply because it is in existence and has to be obeyed, and the latter, it would seem, is not the sense in which this language was used in the *Rohde* case, at page 477.

In my opinion, the reserved questions should be answered in the affirmative.