## IN THE MATTER OF DOMINGO GALANG ZARATE
### *v.* ALLEN & ROBINSON.

### No. 2023.

Argued September 28, 1931.          Decided October 5, 1931.

#### PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The third judge of the circuit court of the first judicial circuit has reserved to this court the following question: "Is a citizen of the Philippine Islands, who has continuously and at all times resided in the Philippine Islands, a non-resident alien within the meaning of section 3611, Revised Laws of Hawaii 1925?"

The facts out of which the question arose are as follows: On the 21st day of November, 1929, the industrial accident board of the City and County of Honolulu, Territory of Hawaii, awarded compensation to Mrs. Domingo Galang Zarate, on behalf of herself and her three minor children. On December 16 an appeal was taken from this award to the circuit court of the first judicial circuit and thereupon the question reserved to this court was presented to the trial court for decision.

The section of the Workmen's Compensation Act referred to in the question provides as follows: "An alien

shall not be considered a dependent within the meaning of this chapter unless actually residing within the United States."

It is contended by the appellant that the word "alien," as used in this section, was intended by the legislature to be used in the sense of "non-citizen" and that the section should be construed as though it read, "No one who is not a citizen of the United States shall be considered a dependent within the meaning of this Act unless actually residing within the United States." There is nowhere in the Workmen's Compensation Act a definition of "alien" nor is there anything in the quoted section of that Act which requires that the meaning we are asked by the defendant to place upon it should be adopted. Under these circumstances we must assume that the legislature intended to use the term in its established legal sense and not in a special or restricted sense.

In *Gonzales* v. *Williams,* 192 U. S. 1, the court had under consideration the question of whether one Isabella Gonzales, an unmarried woman and native of Porto Rico, who sought entry into the United States after the Treaty of Paris by which Porto Rico, Guam and the Philippine Islands were ceded by Spain to the United States, could be denied admittance into the United States under the exclusionary clause of the Immigration Act as it then existed, relating to alien immigrants. The court in its opinion confined itself to the single question of whether Miss Gonzales was an alien. After reciting the relevant portions of the Treaty of Paris and the Act of Congress providing for a civil government in Porto Rico, the court said (p. 12): "Gonzales was a native inhabitant of Porto Rico and a Spanish subject, though not of the Peninsula, when the cession transferred her allegiance to the United States, and she was a citizen of Porto Rico under the act. And there was nothing expressed in the

act, nor reasonably to be implied therefrom, to indicate the intention of Congress that citizens of Porto Rico should be considered as aliens, and the right of free access denied to them. Counsel for the government contends that the test of Gonzales' rights was citizenship of the United States and not alienage. We do not think so, and, on the contrary, are of opinion that if Gonzales were not an alien within the act of 1891" (the Immigration Act), "the order below was erroneous. Conceding to counsel that the general terms 'alien,' 'citizen,' 'subject,' are not absolutely inclusive, or completely comprehensive, and that, therefore, neither of the numerous definitions of the term 'alien' is necessarily controlling, we, nevertheless, cannot concede, in view of the language of the treaty and of the act of April 12, 1900, that the word 'alien,' as used in the act of 1891, embraces the citizens of Porto Rico." In holding definitely that Miss Gonzales was entitled to be admitted into the United States the court said (p. 13): "We think it clear that the act relates to foreigners as respects this country, to persons owing allegiance to a foreign government, and citizens or subjects thereof; and that citizens of Porto Rico, whose permanent allegiance is due to the United States; who live in the peace of the dominion of the United States; the organic law of whose domicil was enacted by the United States, and is enforced through officials sworn to support the Constitution of the United States, are not 'aliens,' and upon their arrival by water at the ports of our mainland are not 'alien immigrants,' within the intent and meaning of the act of 1891."

In *Toyota* v. *United States,* 268 U. S. 402, the court had before it the question whether a person of the Japanese race, born in Japan, was entitled under the naturalization statutes enacted by Congress to become a naturalized citizen of the United States. In giving its

reasons for answering this question in the negative the court found it necessary to discuss the status of the citizens of the Philippine Islands in their relation to the naturalization laws. At page 410 the court said: "Under the treaty of peace between the United States and Spain, December 10, 1898, 30 Stat. 1754, Congress was authorized to determine the civil rights and political status of the native inhabitants of the Philippine Islands. And by the act of July 1, 1902, § 4, c. 1369, 32 Stat. 691, 692, it was declared that all inhabitants continuing to reside therein who were Spanish subjects on April 11, 1899, and then resided in the Islands, and their children born subsequent thereto, 'shall be deemed and held to be citizens of the Philippine Islands and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain,' according to the treaty. The citizens of the Philippine Islands are not aliens. See *Gonzales* v. *Williams,* 192 U. S. 1, 13. They owe no allegiance to any foreign government."

It is evident that the court in the *Gonzales* case decided that Porto Ricans were not aliens because they owed allegiance to no other country than the United States and that the court for the same reason reached a similar conclusion regarding Filipinos in the *Toyota* case. There is nothing in the statute under consideration to indicate that the legislature intended that any other test should be applied in determining who are aliens.

The reserved question is answered in the negative.

*H. E. Stafford* (also on the briefs) for claimant.

*J. R. Cades* (*Smith & Wild* on the brief) for defendant.