PEREGRINA LUMANG GAMBALAN *v.*
KEKAHA SUGAR COMPANY, LIMITED.

NO. 2747.

ARGUED JANUARY 3, 1952.        DECIDED FEBRUARY 20, 1952.

TOWSE, C. J., LE BARON, J., AND CIRCUIT JUDGE PARKS
IN PLACE OF STAINBACK, J., DISQUALIFIED.

OPINION OF THE COURT BY TOWSE, C. J.

Six questions of law have been certified by the Industrial Accident Board, County of Kauai, Department of Labor and Industrial Relations, Bureau of Workmen's Compensation, Territory of Hawaii. (R. L. H. 1945, § 4442.)

The facts certified are: Peregrina Lumang Gambalan, a citizen of the Republic of the Philippines, was employed at the time of his death by the appellee under the provisions and promulgated regulations of "An Act to provide for the complete independence of the Philippine Islands, to provide for the adoption of a constitution and a form of government for the Philippine Islands, and for other purposes." (48 Stat. 456; 53 Stat. 1226; 48 U. S. C. A. §§ 1231-1247 [approved March 24, 1934 as amended August 7, 1939].) On August 29, 1948 he sustained a personal injury from an accident arising out of and in the course of his employment,

not caused by his wilful intention to injure himself or another, or by intoxication, said injury resulting in death. By compensation order his estate was awarded medical, surgical, hospital services and supplies, and maximum burial expenses of $200. (Workmen's Comp. Law, R. L. H. 1945, c. 77.) His widow, claimant-appellant herein, appealed from the awards to the appeal board, upon the ground that the orders failed to find dependency in her favor and in favor of four surviving minor children. By regulations promulgated under the Philippine Independence Act and to relieve a threatened curtailment of sugar and pineapple production in the Territory, the governor, on August 11, 1945, granted the application of the Hawaiian Sugar Planters' Association on its behalf and on behalf of thirty-four sugar plantations, including the employer-appellee, approving the importation of 6,000 Filipino laborers into the Territory from the then Commonweath of the Philippines. The deceased entered the Territory under the foregoing provisions of federal legislation prior to July 4, 1946, on which date, the Republic of the Philippines was established under the operative provisions of the Philippine Independence Act. Employer-employee relationship was established by an employment agreement. The fact of dependency of the widow and minor children and that they were citizens of the Republic of the Philippines, never having entered the United States or asserted any claim to United States citizenship, are certified. It is their status as alien dependents under the Workmen's Compensation Law which is disputed.

The answers to the questions certified rest upon the interpretation of the exclusionary provisions (R. L. H. 1945, § 4412) of the Workmen's Compensation Law:

"An alien shall not be considered a dependent within the meaning of this chapter unless actually residing within the United States, and any alien dependent leaving the

United States shall thereupon lose all right to any benefits under this chapter."

The questions certified follow:

## I.

"When an employee who is a citizen of the Philippine Republic, of an employer covered by the Workmen's Compensation Act, is killed in a compensable industrial accident arising out of and within the scope of his employment, are his dependent wife and minor children who reside in the Philippine Republic, and are citizens of the Philippine Republic and were never residents or citizens of the United States, entitled to death benefits under the Workmen's Compensation Law"?

Prior to July 4, 1946 citizens of the Philippine Commonwealth, who had continuously resided in that Commonwealth, were not nonresident aliens under the exclusionary provisions. Allegiance was determinative of their status, and dependents, whether residing in the Territory or in the Commonwealth, were not embraced within section 4412, *supra.* (*Zarate* v. *Allen & Robinson,* 32 Haw. 118.) However, by operation of law, and on July 4, 1946, both resident and nonresident nationals were divested of that status and became aliens, their allegiance on that date being summarily transferred from the United States to the Republic of the Philippines with accompanying alien status.

The dependents here under consideration resided outside the United States at all times prior and subsequent to Gambalan's death in 1948. They did not seek entry, though eligible under the regulations.

The exclusionary provision is unambiguous and explicit in its designation of and application to "alien" nonresident "dependents." They are specifically excluded.

The first question is answered in the negative.

## II.

"If the answer to the foregoing question is in the nega-

tive, does the fact that such deceased employee entered the Territory prior to July 14, 1946, when the Philippines became an independent Republic pursuant to the Tydings-McDuffie Act and was at the time of his arrival and at the time the employment relationship was entered into a Philippine national entitle such dependent widow and minor children to death benefits under the Act"?

The Philippine Independence Act did not confer United States citizenship upon nationals of that country who had entered the Territory prior to its effective date. Their acquired status as aliens on and after that date is determined in question I. The change of status attaching on July 4, 1946 applied to citizens of the Republic whether temporary or nonresidents of the United States:

"Upon the final and complete withdrawal of American sovereignty over the Philippine Islands the immigration laws of the United States (including all the provisions thereof relating to persons ineligible to citizenship) shall apply to persons who were born in the Philippine Islands to the same extent as in the case of other foreign countries." (47 Stat. 769, c. 11, § 14; 48 Stat. 464, c. 84, § 14; 48 U. S. C. A. § 1244.)

Such rights of dependency, as the widow and minor children possessed, were limited to those expressly conferred by the provisions of the Workmen's Compensation Law in effect at the time of death. That law, prospective in operation, is exclusively determinative of the rights and remedies enforceable upon accrual at that time. (*Browder* v. *United States,* 312 U. S. 335; 2 Sutherland, *Statutory Construction,* 3d ed. p. 509.)

Question two is answered in the negative.

### III.

"If the answers to the foregoing questions are in the negative, does the fact that such deceased employee was brought into the Territory of Hawaii prior to July 14, 1946,

pursuant to the Tydings-McDuffie Act of March 24, 1934, the Regulations of the Department of the Interior promulgated thereunder, and pursuant to an order issued thereunder by the Governor of the Territory of Hawaii requiring as a condition of entry that the employee be given similar perquisites and employee benefits extended to other employees, and that a contract between the deceased employee and the employer agreeing to furnish such benefits was in effect at the time of the death of the employee, entitle the dependent widow and minor children of such employee to death benefits under the Act"?

The provisions of the employment contract referred to are:

"The Plantation or Company will furnish the Laborer during the continuance of the Agreement, the same or similar perquisites and employee benefits that are extended to other employees in like class work on the Plantation or Company to which he is assigned * * *."

Workmen's compensation laws are remedial in nature. They accord employees the exclusive rights and remedies granted or enforceable under their provisions; and are not only in derogation of the common law, but wholly substitutional of it. (See 71 C. J. 229; 1 Schneider, *Workmen's Compensation Text,* 3d ed. p. 15.)

Applicability of those laws to employer-employee relationship is compulsory, the rights and remedies being granted to employers and their employees and dependents by the Territory in the exercise of its police power. (*Anderson* v. *Hawn. Drdg. Co.,* 24 Haw. 97.) Their provisions are imposed upon both alike, the terms of the law limiting its application; and a contractual right having its source in an independent agreement is neither cognizable nor remediable under chapter 77, *supra.*

Independent of this chapter, the employment agreement conferred additional benefits in the nature of perquisites

beyond the provisions of the law, those rights being neither cognizable nor enforceable by award of the Industrial Accident Board, nor in modification or amplification of the compensatory or dependency provisions of the statute itself. (*Campsie* v. *Catton, Neill & Co.,* 26 Haw. 737.)

Question three is answered in the negative.

## IV.

"Does the fact that American citizens, by virtue of the Constitution of the Philippine Republic, enjoy equal rights with Philippine citizens, or any treaty or custom of relationship between the United States and the Philippine Republic give the citizens of the Philippine Republic a nonalien status as that term is used in Section 4412, Revised Laws of Hawaii, 1945"?

The sole portion of this question requiring determination is whether any treaty exists between the United States and the Republic of the Philippines which extends to citizens of the latter a nonalien status such as would affect the application of the exclusionary provisions.

No such treaty exists.

Question four is answered in the negative.

## V.

"Are rights under the Workmen's Compensation Act, including rights for dependents, vested rights at the inception of the employment relationship so that an employee entitled to benefits, including death benefits to his dependents, as a Philippine national at the time of the inception of the employment relationship, does not become divested of those rights by operation of law by reason of the change in status of the Philippine Islands"?

This question is treated in II, *supra.* The right to enforce the dependency benefits asserted attached at the time of death and not at the inception of or during the employment relationship prior thereto. The effective date of independence of the Philippines on July 4, 1946, which

generated the change of the deceased's status from non-alien to alien antedated death.

Question five is answered in the negative.

## VI.

"Is the provision of Section 4412, Revised Laws of Hawaii, 1945, reading: 'An alien shall not be considered a dependent within the meaning of this chapter unless actually residing within the United States, and any alien dependent leaving the United States shall thereupon lose all right to any benefits under this chapter.' invalid by reason of the Constitution of the United States or by reason of a conflict with any federal law"?

No statute or regulation of the United States requiring that the Territory confer death benefits by its Workmen's Compensation Law upon citizens and residents of the Republic of the Philippines; nor, as we find, does any treaty exist between the United States and the Republic of the Philippines mandating that such benefits be conferred. The constitutionality of workmen's compensation laws which deny benefits to aliens not residing in the United States has been sustained. (*Gregutis* v. *Waclark Wire Works,* 86 N. J. L. 610, 92 Atl. 354; *Liberato Et Al.* v. *Royer Et Al.,* 270 U. S. 535, 70 L. Ed. 719; *Micaz* v. *Comp. Comr.,* 123 W. Va. 14, 13 S. E. [2d] 161.)

Question six is answered in the negative.

The wisdom of statutory provisions, as they apply to periods of transition such as here presented, is a matter of legislative discretion and not subject to judicial determination.

*Harriet Bouslog* (*Bouslog & Symonds* on the briefs) for appellant.

*C. N. Tavares* (*Pratt, Tavares & Cassidy* on the brief) for appellee.