In re BAUTISTA.

(District Court, N. D. California, S. D.    November 5, 1917.)

1. ALIENS ⊝61—NATURALIZATION—PERSONS ENTITLED TO BE NATURALIZED —COLOR OR RACE.

Under Naturalization Act June 29, 1906, c. 3592, § 30, 34 Stat. 606 (Comp. St. 1916, § 4366), providing that all the applicable provisions of the naturalization laws shall apply to and authorize the admission to citizenship of all persons not citizens who owe permanent allegiance to the United States and who may become residents of any state or organized territory with certain modifications, when read in the light of the debates in Congress showing that it was for the declared benefit of the inhabitants of Porto Rico and the Philippine Islands, a native Filipino of the Malay race is entitled to naturalization notwithstanding Rev. St. § 2169 (Comp. St. 1916, § 4358), providing that the provisions of that title respecting naturalization shall apply to free white persons and aliens of African nativity or descent, as section 2169 is to that extent amended by the Act of 1906.

2. ALIENS ⊝61—NATURALIZATION—PERSONS ENTITLED TO BE NATURALIZED— "PERSONS WHO OWE PERMANENT ALLEGIANCE TO THE UNITED STATES."

Aliens born outside the Philippine Islands, but residing therein at the date of the treaty of December 10, 1898 (30 Stat. 1754) between the United States and Spain, and who had never been naturalized under the Spanish laws, are not persons owing a permanent allegiance to the United States and entitled to be naturalized under Naturalization Act June 29, 1906, § 30.

3. ALIENS ⊝68—NATURALIZATION—DECLARATION OF INTENTION—"ALIEN."

A native Filipino born in the Philippine Islands while under Spanish rule is an "alien" within Act June 30, 1914, c. 130, 38 Stat. 392, authorizing the naturalization without a previous declaration of intention of aliens who have served an enlistment of not less than four years in the navy and been honorably discharged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alien.]

In the matter of the petition of Engracio Bautista for naturalization. Petition granted.

John W. Preston, U. S. Atty., and George A. Crutchfield, Chief Naturalization Examiner, both of San Francisco, Cal.

MORROW, Circuit Judge. The petitioner is a Mestizo. He was born in the Province of Bulacan on the Island of Luzon in the Philip-

pine Islands, on the 14th of March, 1888. The Islands at that time were under Spanish rule, and the petitioner, with respect to the United States, was born an alien.

The islands were ceded to the United States by the treaty between the United States and Spain signed at Paris on December 10, 1898 (30 Stat. 1754). By article 19 of the treaty it was provided that:

*"The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress."*

By the act of Congress of July 1, 1902, temporarily providing "for the administration of the affairs of civil government in the Philippine Islands, and for other purposes" (chapter 1369, 32 Stat. 691, 692), it was declared in section 4 that:

*"All inhabitants of the Philippine Islands continuing to reside therein who were Spanish subjects on the 11th day of April, 1899, and then resided in said islands, and their children born subsequent thereto, shall be deemed and held to be citizens of the Philippine Islands,* and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain in accordance with the provisions of the treaty of peace between the United States and Spain signed at Paris December tenth, eighteen hundred and ninety-eight."

No provision has been made by Congress for conferring the rights of American citizenship upon the inhabitants of the Philippine Islands except such as is contained in section 30 of the Naturalization Act of June 29, 1906 (34 Stat. 596, 606). It is there provided that:

*"All the applicable provisions of the naturalization laws of the United States* shall apply to and be held to authorize the admission to citizenship of all persons not citizens *who owe permanent allegiance to the United States, and who may become residents of any state or organized territory of the United States,* with the following modifications: The applicant shall not be required to renounce allegiance to any foreign sovereignty; he shall make his declaration of intention to become a citizen of the United States at least two years prior to his admission; and residence within the jurisdiction of the United States, owing such permanent allegiance, shall be regarded as residence within the United States within the meaning of the five-year residence clause of the existing law."

The petitioner has not made his declaration of intention to become a citizen of the United States, as required by this statute, but he claims the right to make his application for citizenship without such declaration, under the Act of June 30, 1914, "making appropriations for the naval service for the fiscal year ending June 15, 1915, and for other purposes" (chapter 130, 38 Stat. 392, 395 [Comp. St. 1916, § 4356]), which provides as follows:

*"Any alien of the age of twenty-one years and upward who may, under existing law, become a citizen of the United States, who has served or may hereafter serve for one enlistment of not less than four years in the United States Navy,* * * * *and who has received therefrom an honorable dis-. charge* * * * *with recommendation for re-enlistment,* * * * shall be admitted to become a citizen of the United States upon his petition without any previous declaration of his intention to become such, and without proof of residence on shore, and the court admitting such alien shall, in addition to proof of good moral character, be satisfied by competent proof from naval * * * sources of such service: Provided, that an honorable discharge from the Navy, * * * with recommendation for re-enlistment, shall be accepted

as proof of good moral character: Provided further, that any court which now has or may hereafter be given jurisdiction to naturalize aliens as citizens of the United States may immediately naturalize any alien applying under and furnishing the proof prescribed by the foregoing provisions."

The petitioner enlisted in the United States Navy on December 24, 1908. At the end of his enlistment, on December 23, 1912, he received an honorable discharge, and on March 17, 1913, he re-enlisted. At the end of this second enlistment he received a second honorable discharge, and on the next day he again re-enlisted. His discharges have always been accompanied by recommendations for re-enlistment. He is now serving his third term of enlistment of four years each, and comes to court with proof of good moral character from his superior officers. He came to the United States fom Manila in 1909, on the United States steamship Logan. He has resided continuously in the United States for more than eight years immediately preceding the date of this petition, and upon examination we find him intelligent, familiar with our form of government, and attached to the principles of the Constitution of the United States.

The petitioner claims the right as a Filipino owing permanent allegiance to the United States to be admitted as a citizen under section 30 of the Act of June 29, 1906, and upon his service in the Navy, and the other qualifications possessed by him he asserts the present right to be naturalized without a previous declaration of an intention to become a citizen.

[1] The first objection urged by the government is that under section 2169 of the Revised Statutes he cannot be admitted to citizenship in the United States. That section provides:

"The provisions of this title [Naturalization] shall apply to aliens [being free white persons, and to aliens] of African nativity, and to persons of African descent."

The Revised Statutes were approved June 22, 1874, and section 2169 was amended by the Act of February 18, 1875 (chapter 80, 18 Stat. 318), by inserting the words last above printed in brackets. The petitioner belongs to the brown or Malay race. He is therefore not an alien of the white race, nor is he an alien of African nativity or of African descent. It is therefore contended that he cannot be admitted to citizenship.

But for what purpose did Congress provide, in section 30 of the Naturalization Act of June 29, 1906, that all the applicable provisions of the naturalization laws of the United States should "apply to and be held to authorize the admission to citizenship of all persons not citizens *who owe permanent allegiance to the United States and who may become residents of any state or organized territory of the United States"?*

Mr. Justice Gray, speaking for a majority of the court, in United States v. Wong Kim Ark, 169 U. S. 649, 653, 18 Sup. Ct. 456, 458 (42 L. Ed. 890), began that remarkably able decision upon the subject of citizenship with the statement of the fundamental rule of construction applicable to such an inquiry, as follows:

"In construing any act of legislation, whether a statute enacted by the Legislature, or a Constitution established by the people as the supreme law of

the land, regard is to be had, not only to all parts of the act itself, and of any former act of the same lawmaking power, of which the act in question is an amendment; but also to the condition, and to the history, of the law as previously existing, and in the light of which the new act must be read and interpreted."

In the late Tap Line Cases, 234 U. S. 1, 27, 34 Sup. Ct. 741, 58 L. Ed. 1185, the court declared that the debates in Congress may be resorted to for the purpose of ascertaining the situation which prompted the legislation.

Following that rule, we find that section 30 of the Act of June 29, 1906, was framed pursuant to the provision of article 9 of the Treaty of Paris, and for the declared benefit of the inhabitants of Porto Rico and the Philippine Islands, and that such was clearly the understanding of Congress when it enacted the section into law. The act in which this section is found originated in the House of Representatives in February, 1906. In the Senate an amendment was offered by Sen. Foraker on June 27, 1906, which he explained to the Senate in the following language:

"I offer an amendment to the bill, to be attached to it as an additional section, which has special reference to Porto Rico and the Philippine Islands. It is a provision that passed the Senate by a unanimous vote—that is, it passed without any opposition, it is perhaps more proper to state—in the Fifty-Eighth Congress. I send it to the desk and ask that it may be read."

It was read, and after some discussion was adopted. It was disagreed to in the House, but was afterwards adopted by both houses upon a conference report, and is the section now under consideration. Cong. Record, vol. 40, pt. 10, 59th Cong., 1st Sess. pp. 9359, 9407, 9505, 9576, 9691.

It appears that in the Fifty-Eighth Congress referred to by Sen. Foraker the amendment offered by him and adopted in the Fifty-Ninth Congress was the first section of a Senate bill introduced by the Senator in the Fifty-Eighth Congress, making "applicable the provisions of the naturalization laws of the United States to Porto Rico, and for other purposes." In the report of the committee and in the course of the debate it was stated that the bill was also applicable to the Philippine Islands. Sen. Foraker said:

"I do not know why it should not apply to a citizen of the Philippines living there, an inhabitant there, and owing allegiance to us, *owing permanent allegiance to us as a people. That expression was furnished us by the State Department. This measure was referred to the State Department and very carefully considered there. If my memory does not serve me incorrectly, it originated with the State Department.* They communicated to us in regard to it, saying that this trouble constantly arises. The citizens of Porto Rico and the citizens of the Philippines also, for I think it would have equal application to them, owe us permanent allegiance; and yet if they see fit to come here and reside in good faith and for all time they never can become naturalized. Their condition is worst than the condition of their fellow citizens who, under the terms of the treaty of peace, elected to retain their allegiance to Spain." Cong. Record, vol. 38, pt. 2, 58th Cong., 2d Sess., pp. 1254, 1255.

We are thus informed that "owing permanent allegiance" to the United States was a term used by the Department of State to desig-

nate a certain class of people residing in Porto Rico and the Philippine Islands, and it was the situation of these people that prompted the legislation providing that, by coming into the United States and possessing certain qualifications, they might become citizens of the United States.

In an opinion by Atty. Gen. Bonaparte addressed to the Secretary of the Interior, dated July 10, 1908, replying to the question whether under the Act of June 29, 1906 (34 Stat. 596, 606), a native Filipino, owing permanent allegiance to the United States, who was a resident of one of the states, could become by naturalization a citizen of the United States, he stated that he could. In the course of the opinion the Attorney General said:

"This," referring to section 30 of the Act of June 29, 1906, "describes exactly the status of the inhabitants of the Philippine Islands. They are not aliens, for they are not subjects of and do not owe allegiance to any foreign sovereignty. They are not citizens, yet they owe permanent allegiance to the United States, since they owe and can owe it to no other sovereignty. The applicant is not to be required to renounce allegiance to any foreign sovereignty, because he owes none."

The Attorney General here uses the word "alien" as describing those who are subjects of a foreign sovereignty, and not those who are aliens by birth but whose allegiance to a foreign sovereignty has been dissolved by treaty. We shall return to this question later.

In the case of In re Alverto, 198 Fed. 688, the District Court for the Eastern District of Pennsylvania held that section 2169 of the Revised Statutes had not been repealed by the Naturalization Act of June 29, 1906, and that Congress did not intend to extend the privilege of citizenship to those who became citizens of the Philippine Islands under the Act of July 1, 1902, unless they were free white persons or of African nativity or descent. The court accordingly refused to admit a Filipino to citizenship.

In the case of In re Rallos, 241 Fed. 686, the District Court for the Eastern District of New York followed the decision in the above case and denied the application of a Filipino to be naturalized.

While we are of opinion that section 2169 of the Revised Statutes was not repealed by the Act of June 29, 1906, we think we have clearly shown by the proceedings in Congress that it was expressly amended by that act so as to admit to citizenship all persons not citizens who, owing "permanent allegiance to the United States," and possessing the other qualifications provided by the statute, became residents of any state or organized territory of the United States. This was done by Congress with full knowledge that the Filipino belonged to the Malay or brown race. It must therefore have been the purpose of Congress to so modify section 2169, R. S., as to admit to citizenship the Filipino otherwise qualified for citizenship, notwithstanding he is not an alien of the white race nor an alien of African nativity or descent. In the naturalization case of Monico Lopez, Naval Digest 1916, p. 207, the Supreme Court of the District of Columbia held that a native Filipino was eligible to citizenship in the United States. And in the case of In re Mallari, 239 Fed. 416, the District Court of Massachusetts held that a Filipino was eligible to citizenship notwithstanding the restric-

tion contained in section 2169, R. S., but denied the application for naturalization on the ground that the applicant had not shown compliance with the provisions of section 30 of the Act of June 29, 1906, with respect to the declaration of intention and residence.

Upon the decision of the Supreme Court of the District of Columbia in the case of Monico Lopez, supra, the Secretary of Labor requested the present Attorney General to take the necessary steps to have the decision reviewed in the appellate court. In reply to this request, Solicitor General Davis, in a letter dated January 4, 1916, stated that the opinion of the court in the Lopez Case was but a reaffirmation of the opinion of Attorney General Bonaparte given to the Secretary of the Interior under date of July 10, 1908, and that the Department of Justice saw no reason for reversing that opinion.

[2] It will be noticed that it is not "all the inhabitants" nor "all the citizens of the Philippine Islands" mentioned in the act of 1902 that are authorized to apply for citizenship in the United States, but only those who, with certain other qualifications, "owe permanent allegiance to the United States"; that is to say, the natural-born inhabitants of the Philippine Islands, who, after becoming residents in the United States and having the other necessary qualifications, were authorized to apply for citizenship in the United States. We say "natural-born" citizens, because we do not find that the government of the Islands ever had any authority to naturalize aliens. Under Spanish rule the application of a foreigner for a certificate of naturalization had to be made to the Spanish Cortez at Madrid through the Governor General of the Philippine Islands, and an indispensable requisite in such an application was that the applicant should show that he professed the Catholic faith. The naturalized inhabitants of the Islands, if any there were at the date of the treaty, must therefore have been a very small part of the population, so that those who on the passage of the Act of June 29, 1906, owed permanent allegiance to the United States were practically only two classes: First, Peninsula Spaniards, that is to say, natives of Spain, who within one year from the date of the treaty had not elected to preserve their allegiance to the Crown of Spain; and, second, natural-born Filipinos. The first were eligible to citizenship in the United States under section 2169, R. S., but the second were not, and it was to make them eligible that section 30 of the Act of June 29, 1906, was passed.

But there was another class of inhabitants whose status it is thought may be somehow involved in this legislation. This class may be described in a general way as aliens not eligible to citizenship in the United States under section 2169, R. S. But these aliens never owed permanent allegiance to the United States, and do not owe such allegiance now. The aliens who resided in the Islands at the date of the treaty continued to owe their permanent allegiance to the countries of which they were subjects, and only owed a temporary allegiance to the United States. The allegiance they owed to their sovereigns was not dissolved by the treaty. This temporary allegiance was transferred to the United States, but their permanent allegiance was continued to the sovereignty of which they were subjects. But with the

Filipino it was different. His allegiance to the Crown of Spain was dissolved by the treaty and his permanent allegiance was transferred to the United States. This limitation of the right of naturalization in the United States under section 30 to those only who owe permanent allegiance to the United States excludes aliens born elsewhere than in Porto Rico and in the Philippine Islands, unless eligible under section 2169 of the Revised Statutes. A Chinese person born in China was a subject of China, and, if residing in the Philippine Islands at the time of the treaty or at the time of the passage of the act of 1902, he owed only a temporary allegiance to the United States. The same rule would apply to all the other aliens residing in the Islands at that time. This answers the objection that the Act of June 30, 1906, construed as here indicated, would admit to citizenship a large number of persons which the policy of the United States has heretofore excluded. The act would clearly have no such effect.

We conclude, therefore, that the distinction of color contained in section 2169 of the Revised Statutes must yield to the clearly expressed purpose of Congress to modify that section by the Act of June 29, 1906, in favor of the natural-born Filipino coming into the United States and acquiring the other qualifications provided by law. The power to establish rules of naturalization is vested exclusively in Congress, and a rule so established must be observed by the courts. Chirac v. Chirac, 2 Wheat. 259, 268, 4 L. Ed. 234; United States v. Wong Kim Ark, 169 U. S. 649, 701, 18 Sup. Ct. 456, 42 L. Ed. 890.

[3] But there is the further objection that the petitioner has not heretofore declared his intention to become a citizen of the United States and that the Act of June 30, 1914, providing that certain persons who have served one enlistment of not less than four years in the United States Navy or Marine Corps and been honorably discharged may be naturalized without such a previous declaration, applies only to aliens, and the petitioner is not an alien. He was born an alien, and until now he has taken no step to change his status. It is true his status was changed by the Treaty of Paris when his allegiance to the Spanish Crown was dissolved, and again when the Act of July 1, 1902, providing temporarily for the administration of the affairs of the civil government of the Philippine Islands, made him a citizen of the Philippine Islands. But now, if otherwise qualified, he may himself take the further step and become a citizen of the United States under section 30 of the Act of June 29, 1906; and this is made possible by the provision enacted expressly for the benefit of those inhabitants of Porto Rico and the Philippine Islands whose allegiance to the Crown of Spain has been dissolved by the Treaty of Paris and their permanent allegiance transferred to the United States, and because of that status are not now required to renounce allegiance to any foreign sovereignty.

Who are aliens under the naturalization laws of the United States has not been definitely defined by the Supreme Court of the United States. But in Low Wah Suey v. Backus, 25 U. S. 460, 473, 32 Sup. Ct. 734, 737 (56 L. Ed. 1165), that court, in construing the alien immigration act of February 20, 1907 (chapter 1134, 34 Stat. 898), adopted

the definition given in 2 Kent, 50; 1 Bouvier's Law Dic. 129. "An alien has been defined," says the court, "to be 'one born out of the jurisdiction of the United States, and who has not been naturalized under their Constitution and laws.'" This definition is also found in Webster's Dictionary; Century Dictionary; Black's Law Dictionary; 2 Cyc. 85; 2 Corpus Juris, 1043; 2 Am. & Eng. Ency. (2d Ed.) 64; 1 Ruling Case Law, 794; Milne v. Huber, 17 Fed. Cas. (No. 9617) p. 406; 3 McLean, 212, 219; Buffington v. Grosvenor, 46 Kan. 730, 732, 27 Pac. 137, 138, 13 L. R. A. 282; McGregor v. McGregor, 33 How. Prac. (N. Y.) 456, 458; Lyons v. State of California, 67 Cal. 380, 382, 7 Pac. 763; United States v. Williams (C. C.) 132 Fed. 894, 895; and in the case of In re Gonzales (C. C.) 118 Fed. 941.

In this last case Isabella Gonzales, an unmarried woman, was born and resided in Porto Rico, and was an inhabitant of that island on April 11, 1899, the date of the proclamation of the Treaty of Paris. She arrived at the port of New York from Porto Rico in 1902, where she was prevented from landing as an "alien immigrant," in order that she might be returned to Porto Rico if it appeared that she was likely to become a public charge. Circuit Judge Lacombe held that as she was an alien by birth she was still an alien, unless in some appropriate way she had since become naturalized. This case was taken to the Supreme Court, and appears under the title of Gonzales v. Williams, 192 U. S. 12, 24 Sup. Ct. 177, 48 L. Ed. 317. The court, in determining the question involved, limited its decision to holding that Gonzales was not an alien immigrant within the meaning of the term as used in the Act of March 3, 1891, c. 551, 26 Stat. 1084, without passing upon the broader question decided by Judge Lacombe.

In United States v. Wong Kim Ark, 169 U. S. 649, 702, 18 Sup. Ct. 456, 477 (42 L. Ed. 890), Mr. Justice Gray, in defining citizenship, had this to say concerning naturalization:

"A person born out of the jurisdiction of the United States can only become a citizen by being naturalized, either by treaty, as in the case of the annexation of foreign territory; or by authority of Congress, exercised either by declaring certain classes of persons to be citizens, as in the enactments conferring citizenship upon foreign-born children of citizens, or by enabling foreigners individually to become citizens by proceedings in the judicial tribunals, as in the ordinary provisions of the naturalization acts."

We think the petitioner, who was alien born and has not been naturalized in the United States, is an alien as that term is used in the Act of June 30, 1914. Any other definition that would exclude the petitioner would defeat the purpose of the act to encourage enlistment in the services therein mentioned. All statutes must be given a reasonable construction with a view to effecting the object and purposes thereof. Low Wah Suey v. Backus, 225 U. S. 460, 475, 32 Sup. Ct. 734, 56 L. Ed. 1165. The petitioner has all the essential and determining qualifications required by the act. He is 21 years of age and upwards, and we have determined that under existing laws he may become a citizen of the United States. He has rendered the necessary naval service, has been honorably discharged from such service, and has twice been recommended for re-enlistment,

and has the intelligence to understand and appreciate our form of government and the constitutional principles under which it is administered. He has all the qualifications for citizenship required by the statute of any alien, and, if the laws of naturalization are to be construed in accordance with the uniform rule required by the Constitution of the United States, we must hold that Congress intended the Act of June 30, 1914, to apply to aliens by birth who, possessing the other necessary qualifications of age, character, and service, may under existing law become citizens of the United States. Under the statute so construed the petitioner is entitled to be admitted as a citizen. This was the conclusion reached by Judge Rose of the District Court of Maryland with respect to an application for citizenship from a native of Porto Rico. In re Giralde, 226 Fed. 826. We concur in that opinion, and deem it applicable to the present case.

The applicant will be admitted to citizenship.