## TOYOTA *v.* UNITED STATES

ON CERTIFICATE FROM CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 231. Argued March 18, 1925.—Decided May 25, 1925.

1. A person of the Japanese race, born in Japan, may not legally be naturalized under the seventh subdivision of § 4 of the Act of June 29, 1906, as amended May 9, 1918, 34 Stat. 601, 40 Stat. 542; nor under the Act of July 19, 1919, 41 Stat. 222. P. 407.

2. The seventh subdivision, *supra,* in permitting "any alien" who has rendered specified military or maritime service, and fulfills other prescribed conditions, on presentation of the required declaration of intention, to petition for naturalization without proof of 5 years' residence in the United States; and in permitting "any alien" serving in the forces of the United States during the time the country was engaged in the late war to file his petition without such declaration or such proof of residence, was not intended in those cases to eliminate the distinction made in Rev. Stats. § 2169 based on color or race, but, like earlier acts using the same phrase, refers to aliens who might, consistently with that distinction, become citizens. P. 409.

3. In § 2 of the above Act of 1918, providing that nothing in the Act shall repeal or in any way enlarge Rev. Stats. § 2169 "except as specified in the seventh subdivision of this Act and under the limitation therein defined," the exception does not *imply* an intention to depart from the race or color distinction of § 2169 as to the aliens mentioned in the seventh subdivision but refers to the provision there made for naturalization of native-born Filipino service men. *Id.*

4. Prior to the Act of 1906, *supra,* citizens of the Philippine Islands were not eligible to naturalization under Rev. Stats. § 2169, because not aliens and therefore not within its terms. P. 410.

5. The Act of 1906, *supra,* § 30 of which extends the naturalization laws, with some modifications, to "persons not citizens who owe permanent allegiance to the United States and who may become residents of any State or organized Territory of the United States," did not disturb the distinction based on race or color, in Rev. Stats. § 2169. P. 411.

6. Prior to the Act of 1918, *supra,* Filipinos not being "free white persons" or "of African nativity" were not eligible to citizenship of the United States; but an effect of that act was to authorize the naturalization of those native-born Filipinos, of whatever race or color, having the qualifications specified in § 4, subdiv. seventh. *Id.*

7. The Act of July 19, 1919, *supra,* provided that "any person of foreign birth" who served in the forces in the late war should under certain conditions, "have the benefits of" the seventh subdivision of § 4 of the Act of June 29, 1906, *supra,* as amended. *Held* that "any person of foreign birth" is not more comprehensive than "an alien" in the latter act. P. 412.

QUESTIONS certified by the Circuit Court of Appeals, arising upon an appeal by Toyota from a decree of the District Court (290 Fed. 971) canceling his certificate of naturalization in a proceeding brought by the Government for that purpose under the Naturalization Act.

*Mr. Laurence M. Lombard,* for appellant.

The necessary inference from the repealing clause, Act of 1918, § 2, is that in subdivision 7 we shall find some class specified which but for the words "except as specified" would be restricted by Rev. Stats. § 2169. Obviously this must refer to a class of persons who under prior laws were not subject to naturalization. *Brown* v. *Maryland,* 12 Wheat. 419 at page 438.

Looking at subdivision 7, what persons are specified? None of its provisions has any bearing on the question except as they show that every provision of the 7th subdivision has in view the speedy naturalization of those engaged in any public service of the United States having relation to the conduct of the war. The natural meaning of these words is that any Filipino and any alien and any Porto Rican, all having the qualifications set forth, are the persons "specified" in the 7th subdivision.

As both Filipinos and Porto Ricans were already eligible to naturalization and needed nothing to save them from the limitation of Rev. Stats. § 2169, the words "except as specified" must have had reference to "any aliens" as the class as to which that section was repealed or enlarged.

This construction of the Act of May 9, 1918, is the only one which will give effect to all the words. From the language, it is clear that Congress intended to enlarge § 2169 as to certain persons. That section does not set forth the qualifications necessary to obtain naturalization, but states the races to whom the privileges of naturalization are limited. Therefore, any enlargement of it

must extend the privileges of naturalization to some race or races not heretofore eligible—not to all members of the race, released from the limitations of § 2169, but only to those bearing the qualifications required by subdivision 7.

The Government has argued that the addition was solely the inclusion of Filipinos and Porto Ricans. This cannot have been the fact because Filipinos and Porto Ricans could already be naturalized under § 30 of the Act of June 29, 1906, and therefore as to them any addition would be unnecessary and superfluous. *In re Bautista*, 245 Fed. 765; *In re Giralde*, 226 Fed. 826; *In re Mallari*, 239 Fed. 416; *In re Monico Lopez*, Naval Digest 1916, p. 207 (Supreme Court of D. C. 1915); 27 Op. Atty. Gen. 12; Letter of Solicitor Gen. Davis to Secretary of Labor, January 4, 1916, reaffirming opinion of Atty. Gen. Bonaparte.

All other aliens except Asiatics could of course be naturalized under § 2169; so, unless the words " except as specified " refer to " any aliens " as specified in subdivision 7 and these words in turn include in their meaning " Asiatics," the entire exception becomes superfluous. The words " any alien " as used in the naturalization laws are nowhere defined, and retain their natural meaning.

The Act of 1918 repealed part of the Act of June 30, 1914, and part of the Act of June 25, 1910, restating the repealed parts but omitting in the re-enactment of the Act of 1914 significant words used in the former act. Such omission implies an alteration in the purpose. As the language of the Act of May 9, 1918, is clear, congressional debates and committee reports are not admissible to influence the interpretation.

The weight of authority is in favor of the naturalization of the appellant. The records of the Bureau of Naturalization show that at least eighty-seven Asiatics have been naturalized in continental United States under

the Acts in question divided among ten naturalization districts. All but nine of these were naturalized prior to the enactment of the statute of July 19, 1919. In addition two hundred and thirteen Asiatics were naturalized by the United States District Court for the District of Hawaii.

The construction placed upon a statute by an executive department charged with its administration is entitled to great weight. The fact that, after the war was over and the need for further recruits had ceased, the Department altered the interpretation formerly placed on the Act of 1918, is of little value in showing the construction contemporaneously with its passage. Aliens having rendered military service upon promise of citizenship should not later have the citizenship withdrawn. Appellant is entitled to naturalization under the Act of July 19, 1919.

*Mr. Assistant Attorney General Donovan,* with whom the *Solicitor General* was on the brief, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Hidemitsu Toyota, a person of the Japanese race, born in Japan, entered the United States in 1913. He served substantially all the time between November of that year and May, 1923, in the United States Coast Guard Service. This was a part of the naval force of the United States nearly all of the time the United States was engaged in the recent war. He received eight or more honorable discharges, and some of them were for service during the war. May 14, 1921, he filed his petition for naturalization in the United States district court for the district of Massachusetts. The petition was granted, and a certificate of naturalization was issued to him. This case arises on a petition to cancel the certificate on the ground that

it was illegally procured.    § 15, Act of June 29, 1906, c. 3592, 34 Stat. 596, 601.   It is agreed that if a person of the Japanese race, born in Japan, may legally be naturalized under the seventh subdivision of § 4 of the Act of June 29, 1906, as amended by the Act of May 9, 1918, c. 69, 40 Stat. 542, or under the Act of July 19. 1919, c. 24, 41 Stat. 222, Toyota is legally naturalized.   The district court held he was not entitled to be naturalized, and entered a decree canceling his certificate of citizenship. 290 Fed. 971.   An appeal was taken to the Circuit Court of Appeals, and that court under § 239, Judicial Code, certified to this court the following questions:  (1) Whether a person of the Japanese race, born in Japan, may legally be naturalized under the seventh subdivision of § 4 of the Act of June 29, 1906, as amended by the Act of May 9, 1918, and (2) whether such subject may legally be naturalized under the Act of July 19, 1919. The material provisions of these enactments are printed in the margin.*

---

* "Seventh. Any native-born Filipino of the age of twenty-one years and upward who has declared his intention to become a citizen of the United States and who has enlisted or may hereafter enlist in the United States Navy or Marine Corps or the Naval Auxiliary Service, and who, after service of not less than three years, may be honorably discharged therefrom, or who may receive an ordinary discharge with recommendation for reenlistment; or any alien, or any Porto Rican not a citizen of the United States, of the age of twenty-one years and upward, who has enlisted or entered or may hereafter enlist in or enter the armies of the United States,  . .  .  or in the United States Navy or Marine Corps, or in the United States Coast Guard, or who has served for three years on board of any vessel of the United States Government, or for three years on board of merchant or fishing vessels of the United States of more than twenty tons burden, and while still in the service on a reenlistment or reappointment, or within six months after an honorable discharge or separation therefrom, or while on furlough to the Army Reserve or Regular Army Reserve after honorable service, may, on presentation of the required declaration of intention petition for naturaliza-

Until 1870, only aliens being free white persons were eligible to citizenship. In that year, aliens of African nativity and persons of African descent were made eligible. See *Ozawa* v. *United States*, 260 U. S. 178, 192. The substance of prior legislation is expressed in § 2169, Revised Statutes, which is: " The provisions of this Title [Naturalization] shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent." A person of the Japanese race, born in Japan, is not eligible under that section. *Ozawa* v. *United States, supra,* 198.

It has long been the rule that in order to be admitted to citizenship, an alien is required, at least two years prior to his admission, to declare his intention to become a citizen, and to show that he has resided continuously in the United States for at least five years immediately preceding his admission. Revised Statues, §§ 2165, 2170;

tion without proof of the required five years' residence within the United States if upon examination . . . it is shown that such residence cannot be established; any alien serving in the military or naval service of the United States during the time this country is engaged in the present war may file his petition for naturalization without making the preliminary declaration of intention and without proof of the required five years' residence within the United States; . . . § 2 . . . Nothing in this Act shall repeal or in any way enlarge section twenty-one hundred and sixty-nine of the Revised Statutes, except as specified in the seventh subdivision of this Act and under the limitation therein defined: . . ." (Act of May 9, 1918, c. 69, 40 Stat. 542, 547.)

"Any person of foreign birth who served in the military or naval forces of the United States during the present war, after final examination and acceptance by the said military or naval authorities, and shall have been honorably discharged after such acceptance and service, shall have the benefits of the seventh subdivision of section 4 of the Act of June 29, 1906 . . . as amended, and shall not be required to pay any fee therefor; and this provision shall continue for the period of one year after all of the American troops are returned to the United States." (Act of July, 19, 1919, c. 24, 41 Stat. 222.)

subd. 1, § 4,. c. 3592, 34 Stat. 596. But at different times, as to specially designated aliens serving in the armed forces of the United States, Congress modified and lessened these requirements. § 2166, Revised Statutes (Act of July 17, 1862, § 21, c. 200, 12 Stat. 594, 597); Act of July 26, 1894, c. 165, 28 Stat. 123, 124; Act of June 30, 1914, c. 130, 38 Stat. 392, 395. In each of the first two of these acts, the phrase " any alien " is used as a part of the description of the person for whose benefit the act was passed. In the last, the language is " any alien . . . who may, under existing law, become a citizen of the United States." Prior to this act, it had been held that the phrase " any alien," used in the earlier acts, did not enlarge the classes defined in § 2169, *In re Buntaro Kumagai,* (1908) 163 Fed. 922; *In re Knight,* (1909) 171 Fed. 299; *Bessho* v. *United States,* (1910) 178 Fed. 245; *In re Alverto,* (1912) 198 Fed. 688. The language used in the Act of 1914 merely expresses what was implied in the earlier provisions.

The seventh subdivision of § 4, of the act of 1918, permits " any native-born Filipino " or " any alien, or any Porto Rican not a citizen of the United States " belonging respectively to the classes there described, on presentation of the required declaration of intention, to petition for naturalization without proof of five years' residence within the United States; and the act permits " any alien " serving in the forces of the United States " during the time this country is engaged in the present war " to file his petition for naturalization without making the preliminary declaration of intention and without proof of five years' residence in the United States. The act of 1919 gave " any person of foreign birth " there mentioned, the benefits of the seventh subdivision of § 4. Evidently, a principal purpose of these acts was to facilitate the naturalization of service men of the classes specified. There is nothing to show an intention to eliminate from the

definition of eligibility in § 2169 the distinction based on color or race. Nor is there anything to indicate that, if the seventh subdivision stood alone, the words " any alien " should be taken to mean more than did the same words when used in the acts of 1862 and 1894. But § 2 of the act of 1918 provides that nothing in the act shall repeal or in any way enlarge § 2169 " except as specified in the seventh subdivision of this Act and under the limitation therein defined." This implies some enlargement of § 2169 in respect of color and race; but it also indicates a purpose not to eliminate all distinction based on color and race so long continued in the naturalization laws. If it was intended to make such change and to extend the privilege of naturalization to all races, the provision of § 2 so limiting the enlargement of § 2169 would be inappropriate. And if the phrase " any alien " in the seventh subdivision is read literally, the qualifying words " being free white persons " and " of African nativity " in § 2169 are without significance. See *In re Para,* 269 Fed. 643, 646; *Petition of Charr,* 273 Fed. 207, 213.

When the act of 1918 was passed, it was doubtful whether § 30 of the act of 1906 extended the privilege of naturalization to all citizens of the Philippine Islands. They were held eligible for naturalization in *In re Bautista,* 245 Fed. 765, and in *In re Mallari,* 239 Fed. 416. And see 27 Op. Atty. Gen. 12. They were held not eligible in *In re Alverto,* 198 Fed. 688, in *In re Lampitoe,* 232 Fed. 382, and in *In re Rallos,* 241 Fed. 686. But we hold that until the passage of that act, Filipinos not being " free white persons " or " of African nativity " were not eligible, and that the effect of the act of 1918 was to make eligible, and to authorize the naturalization of, native-born Filipinos of whatever color or race having the qualifications specified in the seventh subdivision of § 4.

Under the treaty of peace between the United States and Spain, December 10, 1898, 30 Stat. 1754, Congress

was authorized to determine the civil rights and political status of the native inhabitants of the Philippine Islands. And by the act of July 1, 1902, § 4, c. 1369, 32 Stat. 691, 692, it was declared that all inhabitants continuing to reside therein who were Spanish subjects on April 11, 1899, and then resided in the Islands, and their children born subsequent thereto, " shall be deemed and held to be citizens of the Philippine Islands and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain," according to the treaty. The citizens of the Philippine Islands are not aliens. See *Gonzales* v. *Williams,* 192 U. S. 1, 13. They owe no allegiance to any foreign government. They were not eligible for naturalization under § 2169 because not aliens and so not within its terms. By § 30 of the Act of 1906, it is provided: " That all the applicable provisions of the naturalization laws of the United States shall apply to and be held to authorize the admission to citizenship of all persons not citizens who owe permanent allegiance to the United States, and who may become residents of any State or organized Territory of the United States, with the following modifications: The applicant shall not be required to renounce allegiance to any foreign sovereignty; he shall make his declaration of intention to become a citizen of the United States at least two years prior to his admission; and residence within the jurisdiction of the United States, owing such permanent allegiance, shall be regarded as residence within the United States within the meaning of the five years' residence clause of the existing law." (34 Stat. 606.)

Section 26 of that act repeals certain sections of Title XXX of the Revised Statutes, but leaves § 2169 in force. It is to be applied as if it were included in the act of 1906. Plainly, the element of alienage included in § 2169 did not apply to the class made eligible by § 30 of the act of 1906. The element of color and race included in that section

is not specifically dealt with by § 30, and, as it has long been the national policy to maintain the distinction of color and race, radical change is not lightly to be deemed to have been intended. " Persons not citizens who owe permanent allegiance to the United States, and who may become residents of any State " may include Malays, Japanese and Chinese and others not eligible under the distinction as to color and race. As under § 30 all the applicable provisions of the naturalization laws apply, the limitations based on color and race remain; and the class made eligible by § 30 must be limited to those of the color and race included by § 2169. As Filipinos are not aliens and owe allegiance to the United States, there are strong reasons for relaxing as to them the restrictions which do not exist in favor of aliens who are barred because of their color and race. And in view of the policy of Congress to limit the naturalization of aliens to white persons and to those of African nativity or descent the implied enlargement of § 2169 should be taken at the minimum. The legislative history of the act indicates that the intention of Congress was not to enlarge § 2169, except in respect of Filipinos qualified by the specified service. Senate Report No. 388, pp. 2, 3, 8. House Report No. 502, pp. 1, 4, Sixty-fifth Congress, Second Session. See also Congressional Record, vol. 56, part 6, pp. 6000–6003. And we hold that the words " any alien " in the seventh subdivision are limited by § 2169 to aliens of the color and race there specified. We also hold that the phrase " any person of foreign birth " in the act of 1919 is not more comprehensive than the words " any alien " in the act of 1918. It follows that the questions certified must be answered in the negative.

The answer to the first question is: *No.*

The answer to the second question is: *No.*

The CHIEF JUSTICE dissents.