## COSTAN v. MANILA ELECTRIC CO. et al.

Circuit Court of Appeals, Second Circuit.
January 16, 1928.

On Petition for Reargument, February 6, 1928.

No. 98.

1. **Courts ☞314, 321—Federal District Court held without jurisdiction of suit by citizen of California against Philippine corporation, such corporation being neither alien nor citizen of any state.**

Philippine corporation *held* not alien nor citizen of any state, and hence not amenable to jurisdiction of federal District Court in suit by citizen of California.

2. **Courts ☞325—Want of jurisdiction of federal District Court as to Philippine corporation, sued as defendant, held not waived by corporation's general appearance.**

Want of jurisdiction of federal District Court as to Philippine corporation, sued as defendant, was not merely defect in venue, and was not waived by corporation by making general appearance.

3. **Corporations ☞378—Holding company, which uses its stock ownership for actual control and operation of subsidiary's properties, becomes responsible for subsidiary corporation's torts.**

While ownership by holding company of stock of subsidiary corporation does not alone render holding company responsible for torts of subsidiary, holding company becomes responsible if it uses the stock ownership in such a manner as to actually control and operate property of its subsidiary.

4. **Street railroads ☞78—Question of liability of holding company for negligent operation of street railroad by subsidiary company held for jury.**

Liability of holding company for negligent operation of street railway by its subsidiary corporation *held* question for jury, where holding company employed manager for operation of subsidiary's properties, who was subject only to supervision of holding company.

5. **Street railroads ☞78—Corporation employed by holding company to manage and operate street railway of subsidiary company held not liable for subsidiary company's negligence.**

Corporation employed by holding company, with general power to operate and manage street railway properties of subsidiary company, *held* not responsible for negligence of subordinate employees of subsidiary company, where managing corporation was subject to supervision and control of board of directors of holding company, though managing company would be responsible for its own misfeasance, such as negligence in selecting subordinates.

In Error to the District Court of the United States for the Southern District of New York.

Action by George Costan against the Manila Electric Company and others. Judg-ment for defendants, and plaintiff brings error. Reversed in part, and affirmed in part.

The plaintiff, a citizen of California, brought this action to recover damages for personal injuries sustained, as he alleges, through the negligent operation by defendants of a street railway car in Manila, Philippine Islands. The defendants were four corporations—a Philippine corporation, named Manila Electric Company, and three Connecticut corporations, named, respectively, Manila Electric Corporation, J. G. White & Company, Inc., and the J. G. White Management Corporation. The District Court dismissed the action as to the defendant Manila Electric Company for lack of jurisdiction, after setting aside a verdict against that defendant. As to the three other defendants, the plaintiff was nonsuited and a judgment for costs was awarded them. The plaintiff by writ of error seeks to review these rulings. The facts essential to the discussion will be stated in the opinion. Reversed in part and affirmed in part.

Frank L. Tyson, of New York City (Ralph O. L. Fay, of New York City, of counsel), for plaintiff in error.

Spence & Hopkins, of New York City (Kenneth M. Spence, of New York City, of counsel), for defendants in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. [1, 2] There was complete lack of jurisdiction as to the Manila Electric Company. It is a Philippine corporation, and as such is not an alien. See Gonzales v. Williams, 192 U. S. 1, 13, 24 S. Ct. 177, 48 L. Ed. 317; Toyota v. United States, 268 U. S. 402, 411, 45 S. Ct. 563, 69 L. Ed. 1016. Neither is it a citizen of a state. Hooe v. Jamieson, 166 U. S. 395, 17 S. Ct. 596, 41 L. Ed. 1049. The defect is not merely one of venue, which may be waived by a general appearance, as in Western Loan Co. v. Butte & Boston Min. Co., 210 U. S. 368, 28 S. Ct. 720, 52 L. Ed. 1101. Therefore dismissal as to this defendant was correct.

The plaintiff did not oppose the nonsuit as to J. G. White & Co., Inc., and his brief claims no error in the order granting a nonsuit to this defendant.

The errors assigned in nonsuiting the plaintiff against the other two defendants are predicated upon the contention that they were the active tort-feasors, the J. G. White Management Corporation operating and managing the street railway and the car which caused plaintiff's injuries, and the Ma-

nila Electric Corporation owning and controlling the Manila Electric Company, which was the nominal owner of the railway. This involves a review of the relations of the several corporations.

[3] The Manila Electric Corporation (hereafter referred to as the holding company) owned all of the capital stock (except shares necessary to qualify directors) of the Manila Electric Company, the corporate entity owning the railway property in Manila. While stock ownership alone does not render a holding company responsible for the torts of the subsidiary company, still, if the holding company uses its stock ownership in such manner as actually to control and operate the properties of its subsidiary, it does become responsible. Davis v. Alexander, 269 U. S. 114, 117, 46 S. Ct. 34, 70 L. Ed. 186; Chicago, M. & St. P. Ry. v. Minn. Civic Assn., 247 U. S. 490, 501, 38 S. Ct. 553, 62 L. Ed. 1229; The Willem Van Driel (C. C. A. 4) 252 F. 35; Lehigh Valley R. Co. v. Delachesa (C. C. A. 2) 145 F. 617. It is claimed that the holding company so dominated and controlled the owning company, by putting a manager in charge of its operation, as to come within this principle. The evidence as to this is Exhibit F and Moffat's testimony.

[4] Exhibit F is a contract between the holding company [1] and the J. G. White Management Corporation, hereinafter referred to as the manager. It recites that the holding company, through the ownership of the capital stocks of Manila Electric Company [1] and the Manila Suburban Railways Company, "controls certain street and interurban railway and electric properties in the city of Manila, Philippine Islands, and vicinity and is desirous that all such properties owned or controlled by it * * * should have their operation supervised and managed by a competent operating staff." The contract provides that the holding company "employs the manager as general operating manager of its properties with authority to direct, manage and operate such properties." It gives the operating manager "authority to employ

[1] The Manila Electric Railroad & Lighting Corporation was formerly the corporate name of the defendant Manila Electric Corporation, and the contract is made in this former name. Manila Electric Railroad & Light Company was formerly the corporate name of the defendant Manila Electric Company, and the latter is referred to in the contract by its former name. While the record is not clear regarding these changes in corporate names, the appellees' brief states that the case was tried upon this assumption, and we shall so assume.

on behalf of" the holding company such persons as the manager "may deem necessary for the proper operation and business of" the holding company, and to discharge such employees and fix their compensation, "subject to such general supervision and control as may be exercised by the directors" of the holding company. It authorizes the manager to purchase such labor, materials, apparatus, and supplies as in its judgment shall be necessary for the operation of the properties and business, and, subject to certain limitations, to make purchases for construction work. The manager is to furnish a statistician to analyze the financial and operating reports of the holding company and "compare results obtained by the companies [evidently meaning the subsidiary companies] with the results obtained by others," in order to check any tendency towards increase in operating expenses. The manager was to receive $25,000, plus a certain commission of the net earnings.

Attached to the contract is a document which states that the committee, appointed by the directors of the holding company to enter into an agreement with the manager "for the supervision of the management and operation of the properties of [the holding company] and its subsidiaries, has approved the annexed agreement." This document also states that the committee directs that $5,000 of the manager's compensation be paid by the holding company "and the balance to be borne by the subsidiary companies." Mr. Moffat, the secretary and treasurer of the J. G. White Management Corporation, testified that under this contract the manager proceeded to act, and that the contract was in force on the date of the plaintiff's injury.

Without reciting further details of the contract, we think it is apparent that by it the holding company undertook to assume complete control of the operation of its subsidiaries. It employed a manager to operate their properties, authorized him to hire operating employees on its behalf, to fix their salaries, and to discharge them, and to purchase labor, materials, and supplies, in its name and on its behalf, necessary for operation and for construction work. The manager's actions are made subject only to such general supervision as may be exercised by the directors of the holding company, not of the subsidiaries whose properties are to be operated. In short, the holding company utterly disregards the Manila Electric Company as a distinct corporate entity, except perhaps for bookkeeping purposes, and deals with its properties and their operation as a

street railway exactly as though the legal title were in the holding company. It is true that Moffat testified that the motormen and conductors were paid by the subsidiary. It appears also that four-fifths of the manager's $25,000 compensation is to be borne by the subsidiaries—saddled upon them by fiat of the holding company, without action by their boards of directors.

These facts merely recognize the corporate entity of the subsidiaries for certain bookkeeping purposes. They do not disprove the inference, derivable from the contract as a whole, that the holding company had undertaken to operate the properties of its subsidiaries in disregard of their independent corporate organization. Therefore there was ample evidence from which the jury might have found, if indeed such finding was not compulsory, that the holding company was actually operating the railway of its subsidiaries within the doctrine of the cases above cited. We think it was error to grant the nonsuit as to the defendant Manila Electric Corporation.

[5] The nonsuit as to the defendant the J. G. White Management Corporation was right. While its powers as manager were very broad, still it was acting as an agent, not as an owner pro hac vice, in operating the railway. It was subject to supervision and control by the board of directors of its employer, the holding company. Therefore its principal, and not it, should be responsible for the negligence of subordinate employees. They were not its employees, but those of its principal. Of course, it would be responsible for its own misfeasance, such as negligence in selecting subordinates, but nothing of this sort was shown.

The judgment is reversed as to the Manila Electric Corporation, and affirmed as to the other defendants.

### On Petition for Reargument.

SWAN, Circuit Judge. On petition for reargument by Manila Electric Corporation.

Counsel for the petitioner urges that the making of the contract of management was the exercise by the holding company of its stock ownership in the "normal and usual manner," and that our decision unjustly imposes liability upon the petitioner without any evidence in the record of actual domination by it over the affairs and property of its subsidiary.

We cannot believe that it is the normal and usual procedure for the controlling stockholder to appoint a general manager, authorized to hire and discharge employees for the

operation of the corporation's property, to purchase labor, materials, and supplies for the corporate enterprise, and to report and be subject to the stockholder alone. No action by the directors of the Philippine corporation is shown, adopting the action of the stockholder in assuming to appoint such a manager of its properties and to saddle it with the compensation payable to him. That the motormen and conductors were said to be paid by the subsidiary is not alone conclusive. The contract, without further rebutting evidence, is consistent with the theory that the stockholder has undertaken to control the corporate properties of its subsidiaries, in utter disregard of their independent corporate existence, and is enough to have required a submission to the jury of the question whether the holding company was actually operating the railway.

That is all the decision means. On the new trial, petitioner may be able to present rebutting evidence sufficient to overcome the inference which arises from the making of the contract. Because counsel seems to have misconstrued the meaning of our opinion, we have added these supplemental paragraphs. We think it unnecessary, however, to grant the petition for reargument, and the same is accordingly denied.