**In re AYSON et al.**

District Court, N. D. Illinois, E. D.
April 23, 1936.

LINDLEY, District Judge.

The applicants are native Filipinos who seek to become citizens upon compliance with the provisions of the Act of Congress of June 24, 1935, 49 Stat. at Large 397 (8 U.S.C.A. §§ 392e–392g), wherein it is provided that, "notwithstanding the racial limitations contained within section 2169 [section 359 of this title], * * * any alien veteran of the World War heretofore ineligible to citizenship because not a free white person or of African nativity or * * * descent may be naturalized under this act [section]. Section 1 (8 U.S.C.A. § 392e)."

This act eliminates the requirement of declaration of intention, specified in prior acts. Applicant Ayson served in the United States Navy from October 10, 1916, to October 10, 1934. The other applicants saw similar service. All are entitled to admission under the quoted act evidencing an intent by Congress to reward military or naval service by citizenship previously impossible, unless they are excluded from the operation hereof because not included within the meaning of the word "alien."

The history of the naturalization policy of the United States as disclosed by legislation existing prior to the passage of the present act appears in the opinion of the Supreme Court in Toyota v. United States, 268 U.S. 402, 45 S.Ct. 563, 566, 69 L.Ed. 1016, and it is not necessary to discuss prior acts except in supplementary fashion, in so far as they cast light upon the intent of Congress in its latest expression upon the subject-matter.

It is established by the decision cited that applicants are not aliens (except for certain purposes enumerated in the immigration statutes). They owe allegiance to no foreign government, but are, under the treaty of peace with Spain, of December 10, 1898, 30 Stat. 1754, "entitled to the protection of the United States." As the Supreme Court says, as they "are not aliens and owe allegiance to the United States, there are strong reasons for relaxing as to them the restrictions which do not exist in favor of aliens, who are barred because of their color and race." But Congress by its last act has removed such restrictions as to color and race from all aliens who have rendered the specific military or naval service. Can it be said that Congress did not intend to remove the same restrictions as to its wards or proteges, but intended that less favored persons, aliens, should be more tenderly treated than those of our own protectorate. Heretofore Congress has consistently exhibited a contrary intention; it has repeatedly expressed its purpose to favor Filipinos rather than to discriminate against them in favor of alien Japanese or Hinduese who have rendered the same service. It is inconceivable, in view of previous legislation, that Congress has suddenly concluded to face about and reverse its former policy; in short, that by the act under consideration it is intended to penalize Filipinos, as contrasted with those who are in fact aliens. Yet that must be the conclusion if we are to say that the act, by granting relief to aliens, excluded similar relief to Filipinos.

Such conclusion, I believe, does violence to the cardinal rules of construction. It is frequently said that in construing remedial statutes, such as those which grant, establish, or protect civil rights, regard should be had to "the former law, the evils to be cured, the mischief to be remedied and the remedy to be had," in order that the court may extend a liberal construction to the attempt of the Congress to achieve its evident purpose. For that reason, we must refer to the previous history of the attitude of the government towards veterans of whatever race or color, and towards Filipinos, and there it is apparent that the congressional intent was to reward veterans who are not citizens, to extend to them, irrespective of other deterrents, the rights of citizenship. Manifestly, Congress was not thinking of extending this grace only to Chinese, Japanese, or Hinduese otherwise incapable of citizenship, but rather of extending to any one not a citizen, of what-

490

ever color or race, the nation's gratitude for service rendered in the country's defense. Thus the word "alien" must be held to have been used to include more favored classes, but who are not citizens. The restrictive term must have been intended by Congress to include a class less far removed from citizenship. This is akin to saying that the greater includes the lesser; that the species is within the larger class of the genus; that the Filipino is more nearly a citizen than the Hindu; that both are part of the greater common class of persons ordinarily barred from citizenship because of race and color. The removal of disability of the more restricted members of the class being plain, it is apparent that it was intended to include also the less restricted class.

This conclusion I believe to be within the established rules governing statutory construction, which require courts to promote and give effect to, to the fullest reasonable extent, the purpose of Congress— the spirit of its enactment even though contrary to the strict letter thereof. My duty to effectuate such legislative purpose necessitates, if possible, avoidance of a construction which results in unjust discrimination or arbitrary distinctions, not based on real differences in law or fact. General terms are ever subject to implied conditions or exceptions founded on or growing out of established public policy or maxims of natural justice. So, ordinary, usual meanings of words may be disregarded when it is evident that they have been used in another sense. Speaking otherwise, statutes should be construed, if possible, to harmonize with the general legislative policy, unless the intent to depart therefrom is evident. The Legislature must be presumed to have had all such previous legislation in mind, and not to intend to enact inconsistent acts upon the same subject-matter.

I conclude, therefore, that with its evident historic purpose of favoring Filipinos as contrasted with aliens of various races and colors in mind, as pointed out by the Supreme Court in the case of Toyota v. United States, supra, Congress, by the present act, intended, not to discriminate against the applicants, but rather to extend to them, in common with others less favorably situated, the special rights granted.

It is ordered, therefore, that the applications for citizenship be allowed.